UNITED STATES of America,
Plaintiff–Appellant,

v.

Darlene Faye MOGEL, Defendant–Appellee.

No. 90–8549.

United States Court of Appeals,
Eleventh Circuit.

March 19, 1992.

William R. Toliver, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellant.

Sheila Tyler, Federal Defender Program, Atlanta, Ga., for defendant-appellee.

Before TJOFLAT, Chief Judge, DUBINA, Circuit Judge, and HENDERSON, Senior Circuit Judge.

TJOFLAT, Chief Judge:

The Government appeals the sentence imposed upon Darlene Faye Mogel under the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551–3586 (1988), and the guidelines promulgated thereunder (Sentencing Guidelines). Appellee Mogel pled guilty to one count of knowingly and intentionally attempting to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1988). The district court, upon appellee's motion for a downward departure from the sentence range applicable under the Sentencing Guidelines, sentenced appellee to three years probation, six months of which to be served in a halfway house.

We vacate the sentence and remand the case for sentencing in accordance with this opinion.

## I.

In determining the applicable sentence range, the district court adopted the statements and findings of the presentence report. The presentence report found appropriate an adjusted criminal offense level of 26, a two-point reduction for acceptance of responsibility, and a criminal history category of I. On the basis of these factors, the presentence report calculated the applicable sentence range as 51–63 months imprisonment.

The district court identified three grounds for a downward departure from the applicable sentence range: (1) appellee has "a business that could go under if [she is] not there to take care of it"; (2) appellee has "two minor children to support, and a mother that lives with [her]"; and (3) appellee has "never had any problems, never [has] been in any trouble."

We have developed a three-part analysis for reviewing departures from the applicable sentence range under the Sentencing Guidelines:

First, was the [mitigating] circumstance cited by the district court adequately taken into consideration by the Sentencing Commission in formulating the guidelines? *See* [U.S.S.G.] § 5K2.0. Second, if adequate consideration was not given to the circumstance, was consideration of the circumstance consistent with the goals of the sentencing guidelines? *See United States v. Campbell*, 878 F.2d 164, 165 (5th Cir.1989). If the circumstance was properly taken into account, was the extent of the departure from the guideline range reasonable? *See id.; United States v. Michel*, 876 F.2d 784, 786 (9th Cir.1989).

*United States v. Shuman*, 902 F.2d 873, 875–76 (11th Cir.1990). In the present case, we need only wrestle with the first element of our analysis. This element echoes the congressional instruction that a court may only depart from the applicable guideline range if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines," 18 U.S.C. § 3553(b). *See United States v. Delvecchio*, 920 F.2d 810, 813 (11th Cir. 1991).

We find that none of the three factors considered by the district court, taken individually or in their entirety, warrants a departure from the applicable sentence range. After a brief review of the framework for judicial discretion established by the Sentencing Guidelines, we discuss each factor in turn.

## II.

The district court in the present case departed downward from the applicable guideline range for a category I offender on the basis of three offender-related characteristics, without taking into account the relevant penological goals underlying the Sentencing Guidelines. We take this opportunity briefly to comment on the place of judicial discretion under the Guidelines.

Under the Guidelines, every sentence is determined by a combination of an offense- and an offender-based component. The Sentencing Commission has developed a sentencing table to guide the judge in determining the appropriate sentence range for a particular offense committed by a particular offender. The sentencing table indicates the sentence ranges for possible combinations of offense- and offender-based components, with the horizontal axis reflecting the offender's criminal history and the vertical axis reflecting the appropriate offense level. United States Sentencing Commission, *Guidelines Manual* Ch. 5, Pt. A (Nov. 1991).[1]

■ Section 994 of title 28 of the United States Code guides the Commission's consideration of offense- and offender-based components and roughly assigns each of the four penological goals underlying the Guidelines[2] to the consideration of the offense-based component, on the one hand, and the offender-based component, on the other. Section 994(c) identifies seven offense-related characteristics:

(1) the grade of the offense;

(2) the circumstances under which the offense was committed which mitigate or aggravate the seriousness of the offense;

(3) the nature and degree of the harm caused by the offense, ...;

(4) the community view of the gravity of the offense;

(5) the public concern generated by the offense;

(6) the deterrent effect a particular sentence may have on the commission of the offense by others; and

(7) the current incidence of the offense in the community and in the Nation as a whole.

28 U.S.C. § 994(c) (1988). Viewed in their entirety, these seven factors capture the penological goals of retribution and general deterrence.

Similarly, section 994(d) lists eleven offender-related characteristics:

(1) age;

(2) education;

(3) vocational skills;

(4) mental and emotional condition to the extent that such condition mitigates the defendant's culpability or to the extent that such condition is otherwise plainly relevant;

(5) physical condition, including drug dependence;

(6) previous employment record;

(7) family ties and responsibilities;

(8) community ties;

(9) role in the offense;

(10) criminal history; and

(11) degree of dependence upon criminal activity for a livelihood.

28 U.S.C. § 994(d). While some of these characteristics might be considered also relevant for retributive purposes because they arguably affect an offender's culpability, *see, e.g.,* § 994(d)(1), (4), (5), (9), (10), (11), these factors generally reflect the pe-

---

1. Unless otherwise indicated, all citations will be to the November 1991 version of the Guidelines. All relevant differences between this version of the Guidelines and the version in force at the time of appellee's sentencing will be noted.

2. The penological goals underlying the Guidelines are retribution, general deterrence, incapacitation, and rehabilitation. *See* 28 U.S.C. § 991(b)(1)(A) (1988); 18 U.S.C. § 3553(a)(2) (1988); U.S.S.G. Ch. 1, Pt. A, intro.

nological goals of incapacitation and rehabilitation.

■ Subsections 994(d) and (e), however, place severe restrictions on the consideration of offender-related characteristics in general, and on the consideration of the eleven enumerated characteristics in particular. Subsection (d) specifies that "[t]he Commission shall assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders." 28 U.S.C. § 994(d). Subsection (e) further instructs the Commission to "assure that the guidelines and policy statements, in recommending a term of imprisonment or length of a term of imprisonment, reflect the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant." *Id.* § 994(e). By severely limiting, if not entirely foreclosing, the influence of all potentially relevant factors listed in subsection (d) that primarily, if not exclusively, relate to incapacitative and rehabilitative purposes, subsection (e) reflects the irrelevance of rehabilitative considerations to decisions regarding the imposition of a prison sentence and the length of such a sentence. *See* 28 U.S.C. § 994(k).

In sum, section 994 correlates the penological goals of retribution and general deterrence with the offense-based, or vertical, component of a sentence, and the goals of incapacitation and rehabilitation with the offender-based, or horizontal, component. The Guidelines reflect this basic framework by identifying specific circumstances that affect the offense- and offender-related components of a sentence.

In the provisions relating to the offense-based component, the Guidelines rank federal offenses on a base offense level scale, *see* U.S.S.G. Ch. 2 (offense conduct), and assign varying offense level adjustments to circumstances that differentiate two instances of a nominally identical offense in the eyes of the relevant penological goals, retribution and general deterrence, *see* U.S.S.G. Chs. 3 (adjustments), 4, Pt. B (career offenders and criminal livelihood).

The circumstances that may give rise to an adjustment are to be distinguished from grounds for a departure. While the mentioned circumstances affect the determination of the applicable sentence range, grounds for departure guide the decision of whether or not to impose a sentence within that range. Grounds for departure will be discussed below.

Most important among circumstances affecting the offense level are the specific offense characteristics the Guidelines identify for most offenses. *See, e.g.,* U.S.S.G. § 2A5.1 (base offense level for aircraft piracy is 38; increase by 5 levels if death resulted). *But see, e.g.,* U.S.S.G. § 2E4.1 (no specific offense characteristic designated for unlawful conduct relating to contraband cigarettes). Adjustments to the offense level are also permitted for circumstances relating to the victim and the offense (obstruction, multiple counts), all of which reflect either retributive or general deterrent concerns, or both. U.S.S.G. Ch. 3, Pts. A (victim-related adjustments), C (obstruction), D (multiple counts). For example, a defendant who harms a person he or she knew to be unusually vulnerable arguably shows a degree of culpability higher than that shown by a defendant who harms a victim of ordinary vulnerability. U.S.S.G. § 3A1.1. Similarly, general deterrent considerations arguably counsel an upward adjustment for a defendant who harms a police officer. U.S.S.G. § 3A1.2.

■ Somewhat misleadingly, the offense-based component also reflects offender-related characteristics, including those offender-related characteristics enumerated in section 994(d) that arguably relate to retributive concerns. Accordingly, the defendant's role in the offense, *see* 28 U.S.C. § 994(d)(9), career offender status, *see* 28 U.S.C. § 994(d)(10), and dependence upon criminal conduct for a livelihood, *see* 28 U.S.C. § 994(d)(11), may justify an adjustment to the offense level. U.S.S.G. Ch. 3, Pt. B (role in the offense); Ch. 4, Pt. B (career offenders and criminal livelihood). The Guidelines also identify an offender's acceptance of responsibility, evidenced by actions either preceding or following the

commission of the offense, as a ground for adjusting the offense level. U.S.S.G. Ch. 3, Pt. E. Actions demonstrating acceptance of responsibility that precede the commission of the offense for which a sentence is to be imposed arguably reduce the offender's just deserts. Actions subsequent to the commission of the offense, however, bear only a tangential, if any, relation to just deserts. Such actions instead reflect more strongly on the offender's rehabilitative potential and likelihood of recidivism. Although the Commission has cited "many reasons" for allowing offense level adjustments based on actions demonstrating acceptance of responsibility, U.S.S.G. § 3E1.1, comment. (backg'd.), it has not specifically identified the basis for allowing such post-offense actions to influence the offense-based component of a sentence, which, as discussed above, is driven by considerations of retribution and general deterrence, not incapacitation and rehabilitation.

While the Guidelines thus identify a wide variety of circumstances affecting the offense-based component of a sentence, the offender-based component almost entirely relies on the offender's criminal history. U.S.S.G. Ch. 4, Pt. A. In effect, the Commission derived the horizontal axis of the sentencing grid from only one of the eleven offender-related characteristics listed in section 994(d). As discussed above, a significant criminal record affects the offense-based component insofar as it reflects an offender's increased retributive desert. Similarly, an offender's criminal history also determines the offender-based component of his or her sentence insofar as it indicates his or her likelihood of recidivism. The highest criminal history category, VI, is reserved for offenders with the highest risk of recidivism, while the lowest criminal

history category, I, includes offenders with the lowest risk of recidivism. See U.S.S.G. § 4A1.3, p.s. On the side of the offender-based component, there is no equivalent to the base offense level on the offense-based side. Accordingly, the Guidelines do not provide for adjustments to the criminal history category.

■ The Guidelines, however, do allow for a departure from the applicable sentence range if the offender's criminal history category "does not adequately reflect the seriousness of [the offender's] criminal history or likelihood of recidivism...." U.S.S.G. § 4A1.3, comment. (backg'd.). Although seriousness clearly is a retributive, rather than an incapacitative, concern, which would suggest an impact on the offense-based component, the Guidelines provide that a judge, in departing on the mentioned ground, should determine a more appropriate sentence by moving along the horizontal, i.e., the offender-based, axis. *Id.*

■ The Guidelines also allow a judge to depart from the applicable sentence range on the basis of offense-related characteristics, such as the specific harm caused by the commission of the offense, the presence of coercion, and the effect the commission of the offense had on a governmental function. U.S.S.G. §§ 5K2.1–16, p.s.[3] These circumstances are relevant to the offender's *retributive desert* and the need for general deterrence.[4]

■ Finally, and for the present case most significantly, the Guidelines comment on the availability of offender-related characteristics other than criminal history as grounds for departure. *See* U.S.S.G. Ch. 5, Pt. H. As discussed above, the offender-related characteristics listed in section

---

**3.** The grounds for departure listed in section 5K2 are: death, physical injury, extreme psychological injury, abduction or unlawful restraint, property damage or loss, weapons and dangerous instrumentalities, disruption of governmental function, extreme conduct, criminal purpose, victim's conduct, lesser harms, coercion and duress, diminished capacity, public welfare, terrorism, and voluntary disclosure of offense.

**4.** The Guidelines also permit departures for substantial assistance to the authorities. U.S.S.G. § 5K1.1. The Commission has not linked this ground for departure to any of the penological goals of the Guidelines. Instead, it commented that "[a] defendant's assistance to authorities in the investigation of criminal activities has been recognized in practice and by statute as a mitigating sentencing factor." U.S.S.G. § 5K1.1, comment. (backg'd.).

994(d) appear in various places throughout the Guidelines. Criminal history, *see* 28 U.S.C. § 994(d)(10), controls the offender-based component of a sentence and serves as an offense-level adjustment. *See* U.S.S.G. Ch. 4, Pt. A. Role in the offense and degree of dependence upon criminal activity for a livelihood, *see* 28 U.S.C. § 994(d)(9), (11), represent adjustments to the offense level. *See* U.S.S.G. Ch. 4, Pt. B. The remaining eight offender-related characteristics, age, education, vocational skills, mental and emotional condition, physical condition, employment record, family ties and responsibilities, and community ties, *see* 28 U.S.C. § 994(d)(1)–(8), do not control the offender-based component of a sentence and do not constitute adjustments to the offense level. Instead, without exception, they are "not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. §§ 5H1.1–6, p.s.

■ The present case raises the question if, and if so, under what circumstances, a judge may depart from the applicable guideline range on the basis of these specific offender characteristics and other offender-related characteristics not specifically addressed in the Guidelines. We hold that the Guidelines do not categorically prohibit a judge from departing on the basis of offender-related characteristics, whether enumerated in the Guidelines or not. We further indicate the considerations that should guide the judge's discretion in contemplating such a departure.

■ We first address the appropriateness of departing on the ground of the specific offender characteristics mentioned in the Guidelines. Our discussion begins, as it must, from the statutory limitation on a judge's discretion to depart from the applicable sentence range: "The court shall impose a sentence of the kind, and within the range [specified in the Guidelines], ... unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. § 3553(b).

Courts have adopted inconsistent interpretations of the "not ordinarily relevant" language in the policy statements addressing the relevance of specific offender characteristics, U.S.S.G. §§ 5H1.1, p.s. (age), 5H1.2, p.s. (education and vocational skills), 5H1.3, p.s. (mental and emotional conditions), 5H1.4, p.s. (physical condition, including drug dependence and alcohol abuse), 5H1.5, p.s. (previous employment record), and 5H1.6, p.s. (family ties and responsibilities and community ties). While some courts have interpreted the Guidelines as allowing departures based on specific offender characteristics in extraordinary cases, others have read the Guidelines as categorically prohibiting all such departures. *See United States v. Thomas*, 930 F.2d 526, 529–30 (7th Cir.) (highlighting the inter- and intra-circuit disagreements about a district court's authority to depart on the basis of family ties and responsibilities), *cert. denied*, ── U.S. ──, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991). We agree with the Ninth Circuit's conclusion in *United States v. Boshell*, 952 F.2d 1101 (9th Cir.1991), that "[o]ffender characteristics should not ordinarily influence downward or upward" departures, *id.* at 1107 (citing *United States v. Duarte*, 901 F.2d 1498, 1500 (9th Cir.1990)), and that "[o]nly in extraordinary circumstances, may a court rely on one of the six factors listed in section 5H1.1–6 to depart from the guidelines range." *Id.* (citing *United States v. Mondello*, 927 F.2d 1463, 1470 (9th Cir. 1991)); *see also United States v. Headley*, 923 F.2d 1079, 1082 (3d Cir.1991) ("The 'not ordinarily relevant' language of section 5H1.6 suggests that in extreme circumstances departure based on family ties and responsibilities is permissible."); *United States v. Cacho*, 951 F.2d 308, 311 (11th Cir.1992) ("unless there are extraordinary circumstances, a district court may not depart downwardly outside the Guidelines to reflect a defendant's parental situation").

We acknowledge that, while all the policy statements of section 5H1.1–6 provide examples of sentencing considerations potentially informed by the respective offender characteristics, none of the policy statements of that section explicitly authorizes

departure from the guideline range on the basis of offender characteristics. Contrary to the Seventh Circuit's view in *Thomas*, 930 F.2d at 530, we point out, however, that the absence of any language suggesting that the examples in section 5H1.1–6 were meant merely to illustrate, rather than to exhaust, possible applications of offender characteristics does nothing to show that no other applications could be in keeping with the Guidelines. After all, section 5H1.1–6 also contains no language suggesting that the Commission meant categorically to prohibit departures based on specific offender characteristics. "Had the Commission wanted to do that, it knew how...." *Thomas*, 930 F.2d at 530. Section 5H1.10 clearly states that race, sex, national origin, creed, religion and socioeconomic factors "are not relevant in the determination of sentence." U.S.S.G. § 5H1.10.

Moreover, a careful reading of section 5H1.1–6 reveals that none of the examples there listed illustrate cases in which *departure* from the guideline range might be appropriate. Instead, the examples speak to decisions between different terms of imprisonment or types of sentence *within the applicable guideline range.* It makes little sense to argue that an exhaustive list of permissible departures from the guideline range would include not a single example of a permissible departure. Such a list could only be appropriate if the Commission meant categorically to prohibit any and all departures on the basis of specific offender characteristics. This, however, has been shown to be unlikely. Consider further that section 5H1.1–6 implements the congressional mandate to "assure that the guidelines and policy statements, in recommending a term of imprisonment or length of term of imprisonment, reflect the *general inappropriateness* of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant." 28 U.S.C. § 994(e) (emphasis added). We do not interpret this instruction as categorically prohibiting departures from the guidelines sentence range based on the listed offender characteristics. To paraphrase

*Thomas*, "[h]ad the [Congress] wanted to do that, it knew how." Section 994(d), without qualification, admonishes the Commission to assure that "the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders." 28 U.S.C. § 994(d). As mentioned above, the corresponding policy statement, U.S.S.G. § 5H1.10, p.s., is equally unequivocal.

In sum, we interpret the policy statements of section 5H1.1–6 as prohibiting departures from the applicable sentence range in all but extraordinary cases. We further interpret section 5H1.1–6 as presenting illustrations of sentencing choices—other than the decision whether or not to depart—which may be informed by specific offender characteristics. In our interpretation, the examples provided by the Commission are meant to assure that the prohibition against departures in ordinary cases based on specific offender characteristics not be misinterpreted as categorically prohibiting the consideration of specific offender characteristics in all sentencing choices. The 1991 amendment to section 5H1.1–6, though not dispositive of our interpretation of the version of 5H1.1–6 in effect at the time of the sentencing in the present case, supports our reading of the Guidelines. *See, e.g.,* U.S.S.G. Ch. 5, Pt. H, intro. comment. ("The Commission has determined that certain factors are not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range. Unless expressly stated, this does not mean that the Commission views such factors as necessarily inappropriate to the determination of the sentence within the applicable guideline range or to the determination of various other incidents of an appropriate sentence (*e.g.,* the appropriate conditions of probation or supervised release).").

A judge therefore may depart from the applicable sentence range on the basis of the specific offender characteristics listed in section 5H1.1–6. The same must hold true for offender-related characteristics not considered by the Guidelines. As section 3553(b) makes clear, a judge may depart in

the presence of "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission. . . ." 18 U.S.C. § 3553(b). While a judge may depart if the Commission failed to consider the enumerated specific offender characteristics to an adequate degree, so a judge may depart if the Commission did not consider other offender-related characteristics at all.

■■■ Nevertheless, a judge's discretion to depart on the basis of offender-related characteristics, whether listed in the Guidelines or not, must remain within the penological framework established by the Guidelines. All departures must be firmly grounded in one or more of the relevant penological goals underlying the Guidelines. In the present case, the judge departed downward from the sentence range for a category I offender. The placement of an offender in category I reflects the Commission's assessment that the offender possesses the lowest possible likelihood of recidivism. In particular, the low end of the range applicable to a category I offender convicted of a given offense specifies the sentence appropriate for an offender who is so unlikely to engage in future criminal conduct as not to warrant imprisonment for incapacitative purposes. A judge therefore may not depart downward from a category I sentence on incapacitative grounds. Rehabilitative considerations have been declared irrelevant for purposes of deciding whether or not to impose a prison sentence and, if so, what prison sentence to impose. 28 U.S.C. § 994(k).

■■■ Assuming that the offender-related characteristics present in a given case meet the statutory standard under section 3553(b), a judge therefore may depart from a category I sentence on the basis of offender-related characteristics only if considerations of general deterrence or retribution counsel such a departure. The foregoing discussion merely serves to assist district judges in their sentencing decisions by illuminating the second prong of the above-cited test of *United States v. Shuman*, 902 F.2d 873, 875–76 (11th Cir.1990),

which requires that consideration of a ground for departure be consistent with the penological goals of the Guidelines. We now apply the results of our discussion to the issues raised in the present case.

### III.

We first determine whether the Sentencing Commission adequately considered business ownership as a potential sentencing factor. While the Sentencing Commission did not specifically address the relevance of business ownership, it explicitly considered five ways in which business ownership conceivably might be relevant for sentencing purposes, none of which the district court discussed. Five sentencing factors discussed in the Guidelines arguably could have made room for a consideration of business ownership: socioeconomic status, vocational skills, previous employment record, community ties, and dependence upon criminal activity for a livelihood.

■■■ Having concluded that the Sentencing Commission considered business ownership as a "kind" of potential mitigating factor, we discuss whether the Commission considered it to the "degree" appropriate in the present case. *See* 18 U.S.C. § 3553(b). If the Commission has considered a given factor, "departure from the applicable guideline range is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense." U.S.S.G. § 5K2.0, p.s. Bearing this limitation in mind, we address each of the guideline provisions that speak to the relevance, or irrelevance, of business ownership for sentencing purposes.

■■■ Congress has declared socioeconomic status irrelevant for sentencing purposes. 28 U.S.C. § 994(d) ("The Commission shall assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and *socioeconomic status* of offenders." (Emphasis added.)). Accordingly, the Sentencing Commission has specified that socioeconomic status is "not relevant in the determination of a sentence." U.S.S.G.

§ 5H1.10, p.s. Ownership of a business, however, much like ownership of a home or of a car, represents an indicator of socioeconomic status, and, as such, is irrelevant for sentencing purposes.

As to the next three candidates for departure, Congress instructed the Sentencing Commission to "take them into account only to the extent that they do have relevance." 28 U.S.C. § 994(d)(3), (6), (8), (11). Section 994 requires the Commission to "assure that the guidelines and policy statements, in recommending a term of imprisonment or length of a term of imprisonment, reflect the general inappropriateness of considering the ... vocational skills, employment record, ... and community ties of the defendant." *Id.* § 994(e). In policy statements, the Commission has responded to this congressional mandate by finding vocational skills, employment record, and community ties "not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. §§ 5H1.2, p.s., 5H1.5, p.s., 5H1.6, p.s.

■ Since the Commission obviously considered vocational skills, employment record, and community ties as sentencing factors—even if only by following the congressional mandate to reflect their "general inappropriateness"—a court may depart from the guideline sentence on the basis of either factor, "only if [that] factor is present to a degree substantially in excess of that which ordinarily is involved in the offense," U.S.S.G. § 5K2.0, p.s. In other words, "only cases outside the 'heartland' for the crime of conviction warrant departure." *United States v. Brewer*, 899 F.2d 503, 507 (6th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *see* U.S.S.G. Ch. 1, Pt. A, § 4(b) (Sentencing Commission "intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes"). In the case of vocational skills, employment record, and community ties, a district court therefore must overcome two hurdles in order to deviate from the guidelines on the basis of any of these factors.

First, it must find that a given factor "is present to a degree substantially in excess of that which ordinarily is involved in the offense." *See* U.S.S.G. § 5K2.0, p.s. Having so found, the court also must conclude that a given factor warrants departure in the face of the explicit declaration that it is "not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range...." U.S.S.G. §§ 5H1.2, p.s., 5H1.5, p.s., 5H1.6, p.s.

Ownership of a business arguably suggests that a defendant possesses a certain level of vocational skills, might indicate that the defendant will continue to remain employed, and could represent a certain connection to the community. We, however, cannot find that appellee's ownership of a business permits the conclusion that either of the listed factors recognized by the Commission "is present [in appellee's case] to a degree substantially in excess of that which ordinarily is involved in the offense," here knowingly and intentionally attempting to possess cocaine with intent to distribute. *See* U.S.S.G. § 5K2.0, p.s. Neither can we find that appellee's ownership of a business is sufficiently extraordinary to overcome the *strong presumption* against departure on the basis of offender characteristics established in section 5H of the Guidelines.

■ Finally, the Sentencing Commission explicitly considered what relevance, if any, dependence upon criminal activity for a livelihood has for sentencing purposes. *See* U.S.S.G. § 5H1.9, p.s. The Commission determined dependence upon criminal activity for a livelihood to be an aggravating factor. U.S.S.G. § 4B1.3. The absence of a guideline provision concerning the potential relevance of a defendant's lack of dependence upon criminal activity does not imply the Commission's failure to consider the potential relevance of dependence upon criminal activity to an adequate degree. Departure on the basis of business ownership, insofar as that ownership indicates a lack of dependence upon criminal activity for a livelihood, is therefore unwarranted.

## IV.

Like vocational skills, employment history, and community ties, family ties and responsibilities "are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6, p.s. This policy statement responds to Congress' admonition that the Commission "assure that the guidelines and policy statements, in recommending a term of imprisonment or length of a term of imprisonment, reflect the general inappropriateness of considering the ... family ties and responsibilities ... of the defendant." 28 U.S.C. § 994(e). A district court seeking to depart from the guideline range on the basis of family ties and responsibilities thus faces the same two impediments it would encounter should it consider departing on the basis of the defendant's vocational skills, employment record, or community ties. That appellee has "two minor children to support, and a mother that lives with [her]" suggests neither that the factor of family ties and responsibilities "is present [in appellee's case] to a degree substantially in excess of that which ordinarily is involved in the offense [of knowingly and intentionally attempting to possess cocaine with intent to distribute]," U.S.S.G. § 5K2.0, p.s., nor that appellee's family ties and responsibilities are of a degree exceptional enough to warrant a departure in light of the explicit instruction that such ties and responsibilities "are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range," U.S.S.G. § 5H1.6, p.s. *See United States v. Brand,* 907 F.2d 31, 33 (4th Cir.) ("A sole, custodial parent is not a rarity in today's society, and imprisoning such a parent will by definition separate the parent from the children."), *cert. denied,* —— U.S. ——, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990); *Brewer,* 899 F.2d at 508 ("[u]nfortunately, it is not uncommon for innocent young family members, including children ... to suffer as a result of a parent's incarceration" (quoting *United States v. Fiterman,* 732 F.Supp. 878, 885 (1989))); *see also United States v. Daly,* 883 F.2d 313, 319 (4th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990) ("[The defendant] has shown nothing more than that which innumerable defendants could no doubt establish: namely, that the imposition of prison sentences normally disrupts ... parental relationships...."); *cf. United States v. Headley,* 923 F.2d 1079, 1082 (3d Cir.1991) (single mother of five not extraordinary); *United States v. Goff,* 907 F.2d 1441, 1446 (4th Cir.1990) ("nothing extraordinary" about case in which defendant's three minor children would have to live with ill grandmother in Ohio); *United States v. Shoupe,* 929 F.2d 116, 121 (3d Cir.) (case of father, who paid regular child support for son living with ex-wife and who frequently spoke with son on telephone, not extraordinary), *cert. denied,* —— U.S. ——, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991); *United States v. Berlier,* 948 F.2d 1093, 1096 (9th Cir. 1991) (case of defendant trying "to keep his family together" not extraordinary). *But see United States v. Alba,* 933 F.2d 1117, 1122 (2d Cir.1991) (case of "a man who works hard to provide for his family" extraordinary); *United States v. Pena,* 930 F.2d 1486, 1494–95 (10th Cir.1991) (case of single mother of two-month old child and of 16–year old daughter, herself mother of two-month old child, extraordinary). Moreover, "females and mothers are involved in criminal conduct, and the guidelines specifically state that consideration of sex ... is irrelevant to guideline sentencing." *Brewer,* 899 F.2d at 509; *see* 28 U.S.C. § 994(d) ("The Commission shall assure that the guidelines and policy statements are entirely neutral as to the ... sex ... of offenders."); U.S.S.G. § 5H1.10 (sex is "not relevant in the determination of a sentence").

## V.

The district court's consideration of appellee's troublefree past is inappropriate because appellee's placement in criminal history category I already reflects the absence of prior brushes with the law: "The lower limit of the range for a Category I criminal history is set for a first of-

fender with the lowest risk of recidivism. Therefore, a departure below the lower limit of the guideline range for a Category I criminal history on the basis of the adequacy of criminal history cannot be appropriate." U.S.S.G. § 4A1.3, p.s.; *see also United States v. Johnson*, 934 F.2d 1237, 1240 n. 8 (11th Cir.1991) (same).[5]

We conclude that none of the factors enunciated by the district court warrants a downward departure from the applicable guideline range. Our consideration of all three factors in their entirety does not compel a different result. *See Goff*, 907 F.2d at 1447 ("[v]iewing the factors cumulatively adds nothing significant to the calculus"). *But see United States v. Cook*, 938 F.2d 149, 153 (9th Cir.1991) ("a unique combination of factors may constitute the 'circumstance' that mitigates"); *United States v. Takai*, 930 F.2d 1427, 1434 (9th Cir.1991) ("factors specifically found by the district court converge to constitute a unique mitigating circumstance"); *Pena*, 930 F.2d at 1495 (combination of two factors justifies departure).[6]

## VI.

For the reasons above stated, we VACATE the sentence and REMAND for sentencing in accordance with this opinion.

**VACATED and REMANDED.**

---

**5.** As we find unwarranted any downward departure on the grounds enunciated by the district court, we need not, and do not, decide whether the extent of the departure from 51–63 months imprisonment to three years probation was unreasonable.

**6.** We need not, and do not, decide whether a combination of factors independently insufficient to warrant departure may ever permit departure in their entirety.