[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 21, 2001
THOMAS K. KAHN
CLERK

No. 00-13779

D. C. Docket No. 00-00061-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ADRIANA MARIA BURGOS,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

**(December 21, 2001)**

Before TJOFLAT and DUBINA, Circuit Judges, and SHAPIRO\*, District Judge.

---

\*Honorable Norma L. Shapiro, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

TJOFLAT, Circuit Judge:

In this criminal case, the question presented is whether the sentencing guidelines authorize a sentencer to penalize the defendant for refusing to cooperate with the government in a criminal investigation unrelated to the offense for which the defendant is to be sentenced. The answer is no.[1] We therefore vacate the defendant's sentence and remand the case for resentencing.

I.

In June 1999, the United States Customs Service Outbound Currency Task Force at the Miami International Airport conducted an enforcement examination of the passengers on an Aces Airlines flight destined for Medellin, Colombia. Adriana Maria Burgos was randomly selected for an outbound examination for undeclared currency. She was given the Spanish version of Customs Form CP-503 to read and complete. Burgos completed the form and declared that she had $623. A search of her carry-on bag revealed $33,727 stashed away in the pockets of two pairs of jeans.

On February 1, 2000, a Southern District of Florida grand jury indicted Burgos on two counts. Count One alleged that she violated 31 U.S.C. §§

---

[1] If we were to answer this question in the affirmative, we would have to decide whether the Fifth Amendment Due Process Clause or Self-Incrimination Clause precluded the sentencer from considering the defendant's refusal to cooperate.

5316(a)(1)(A) and 5322(a), which, together, require the filing of currency transaction reports, such as the form CP-503 Burgos had filled out; Count Two alleged that she violated 18 U.S.C. § 1001(a)(2), which prohibits making a materially false statement on a U.S. Customs form.

On April 18, 2000, pursuant to a plea agreement, Burgos pled guilty to the first count. The agreement provided that the prosecution could refuse to recommend a two-level reduction of Burgos' base offense level, pursuant to Sentencing Guidelines § 3E1.1, for acceptance of responsibility, if she "fail[ed] or refuse[d] to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct." The plea agreement made no mention of Burgos' cooperation with the government in other pending cases.

The Presentence Investigation Report ("PSI"), prepared after the court accepted Burgos' plea, cataloged Burgos' extensive cooperation in her own case. For example, following the return of her indictment and subsequent arrest, Burgos consented to a search of her (and her husband's) residence. Then, after pleading guilty, during an interview with the court's probation officer, she accepted full responsibility for her criminal conduct, gave details of her life, explained her financial history, listed her present assets, and agreed to meet the probation officer

3

at her home.  As a result, the probation officer, in calculating Burgos' base offense level, reduced the level by two pursuant to U.S.S.G. § 3E1.1(a).  Given Burgos' criminal history category of I, the PSI prescribed a guidelines sentence range of zero to six months imprisonment, and a fine ranging from $1,000 to $10,000.[2] Burgos was eligible for a sentence of probation for a term of one to five years.  18 U.S.C. § 3561(c)(1).

The PSI noted that, on May 25, 2000, her husband had been indicted in the Southern District of Florida for money laundering.  Burgos objected to the inclusion of this information in the PSI on the ground that her husband's indictment was irrelevant, that it should have no bearing on the sentence she should receive.  The probation officer's response to Burgos' objection, set out in the Addendum to the PSI, was this:

> The PS[I] does not report that the defendant's criminal conduct in the instant case is related to her husband's pending case.  Part of the presentence investigation process involves interviewing and reporting personal, social background information about the defendant and her family.  The defendant has been married to her husband since 1986.  Her husband's indictment in a pending federal case represents a significant event in the defendant's social background that the court should be made aware of.  The issue is unresolved.

---

[2]  The penalty prescribed by 31 U.S.C. § 5322(a), the provision to which Burgos pled guilty, is zero to five years imprisonment and a maximum fine of $250,000.

At the sentencing hearing, convened on July 5, 2000, Burgos' counsel argued for a non-incarcerative sentence, one at the low end of the guidelines range, asserting that Burgos had readily pled guilty and that she is the mother of two children. The prosecutor, in response, contended that Burgos should be sentenced to the high end of the range because of the indictment recently filed against her husband. Admitting that he was "not in a position" to show that her husband's case was related to hers, the prosecutor nonetheless implied that it was and therefore requested "some term of incarceration" for Burgos. The district court seized upon this implication and inquired whether Burgos had cooperated with the government in the investigation against her husband. First noting the willing cooperation Burgos had provided in her own case, Burgos' counsel responded that the prosecutor had never asked Burgos to cooperate in the case against her husband. The district court, commenting that her cooperation in her husband's case "would be relevant in terms of where, within the guideline range, she ought to be sentenced," called the hearing "premature," and issued an ultimatum:

> If [Burgos] is willing to cooperate, if she does cooperate, if she can be forthright and demonstrate that she's done everything she can do to be cooperative, then I think she earns the bottom end of the guidelines. If, on the other hand, she's unwilling or she refuses or she's uncooperative in another pending law enforcement investigation, then it seems to me she doesn't earn it. And I wouldn't want to reward her or penalize her today with that as a question mark.

5

The court then continued the sentencing hearing to afford the government an opportunity to ask Burgos to cooperate in the case against her husband.

The court reconvened Burgos' sentencing hearing fifteen days later on July 20. The hearing began with Burgos' counsel's announcement that no agreement had been reached between Burgos and the prosecutor in her husband's case because Burgos had asserted her Fifth Amendment and spousal privileges. The court responded,

> I think we gave you an opportunity to kind of work this out. It apparently hasn't worked out. I don't know what Fifth Amendment privilege you think [Burgos] has. Now that she's been convicted, she's lost that privilege. . . . If she wants to continue to refuse, you know, she has to accept the consequences. . . . it is the judgment of the court that the defendant, Adriana Maria Burgos, is hereby . . . imprisoned for a term of six months.

Citing Estelle v. Smith, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981), and its holding that the Fifth Amendment privilege applies at sentencing, defense counsel urged the court to reconsider its sentence. The court refused to do so. This appeal followed.

## II.

We review a district court's application of the sentencing guidelines de novo. See United States v. Jamieson, 202 F.3d 1293, 1295 (11th Cir. 2000) ("This court

reviews the district court's findings of fact for clear error and its application of the sentencing guidelines to those facts de novo.").

III.

It is obvious that, in arriving at the sentence in this case, the district court penalized Burgos for refusing to cooperate in the case against her husband. Because, as we explain below, federal sentencing law barred the district court from taking the refusal to cooperate into account in fashioning Burgos' sentence, we must vacate the sentence and remand the case for resentencing.

Burgos does not contend – nor could she – that the district court erred in calculating the guideline range in which she should be sentenced. Instead, she argues that the district court erred when it used her refusal to cooperate in the case against her husband in sentencing her to the high end of the prescribed range. The prosecutor, in response, cites to 18 U.S.C. § 3661[3] and U.S.S.G. § 1B1.4[4] and maintains that the district court, in choosing the sentence within the guideline range, was authorized to consider, "without limitation, any information concerning the

---

[3] Title 18 U.S.C. § 3661 (2000) states, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

[4] U.S.S.G. § 1B1.4 states, "In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. See 18 U.S.C. § 3661."

background, character, and conduct of the defendant." [5]  It is true, as the prosecutor

points out, that sections 3661 and 1B1.4 appear to give the district court wide

discretion in sentencing a defendant.  Nevertheless, the prosecutor's argument fails

to persuade us.   As we will establish, the court's sentencing discretion under

sections 3661 and 1B1.4 is limited in two significant ways.  First, in enacting 18

U.S.C. § 3553(a)(2) (2000), Congress codified four sentencing objectives courts

must take into account in fashioning a sentence: punishment, general deterrence,

specific deterrence, and rehabilitation.  If a district court gives weight to a factor

irrelevant to these purposes, then the imposed sentence necessarily exceeds the

court's sentencing discretion.  Second, Congress set specific and definite perimeters

to constrain the Sentencing Commission in establishing the guidelines and,

necessarily, any district court imposing a sentence under the guidelines.

The starting point in our analysis is the sentencing guidelines, and, in

particular, section 1B1.4, which states that the district court, in choosing the

sentence within the guideline range, "may consider, without limitation, any

_____

[5] The prosecutor alternatively argues that the district court did not actually penalize
Burgos for failing to cooperate; instead, the prosecutor asserts, the court "simply [did] not
reward[] [her] for cooperation she never gave."  This argument deserves little discussion
because, as described in part I, supra, the district court explicitly stated that Burgos' six-month
sentence was a "consequence" of her failure to cooperate with the government, and therefore, it
would have to "penalize" her for her refusal.  To accept the reasoning the prosecutor urges upon
us would require us to ignore the record.

8

information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4. The commentary to section 1B1.4 acknowledges that the section is based on 18 U.S.C. § 3661, a statute recodified by Congress in 1984 with an effective date of 1987, and submits that "it [is] clear that Congress intended that no limitation [] be placed on the information that a court may consider in imposing an appropriate sentence under the future guideline sentencing system." U.S.S.G. § 1B1.4, comment (backg'd).

Despite this broad language, however, section 1B1.4 is subject to the constraints of other federal law, namely, 18 U.S.C. § 3553. Indeed, section 1B1.4 itself sets forth a significant exception not included in section 3661: a district court may not consider any factor that is "*otherwise prohibited by law*." U.S.S.G. § 1B1.4 (emphasis added). Moreover, in the sentencing guidelines' enabling statute, 28 U.S.C. §§ 991-998, Congress mandated that the guidelines be "consistent with all pertinent provisions of . . . title 18, United States Code." 28 U.S.C. § 994(a), (b)(1) (1993). This includes, of course, section 3661, which appears to give unfettered discretion to a sentencing court, and section 3553, which governs what exactly a court may consider in imposing a sentence. Although these two sections appear inconsistent, we believe that they operate in harmony, and information of the type considered by section 3661 is subject to the limitations of section 3553. See

United States v. Fairman, 947 F.2d 1479, 1482 (11th Cir. 1991) (finding an apparent inconsistency between section 3661 and 28 U.S.C. § 994, a statute which also constrains judicial discretion, and "mak[ing] sense of the inconsistencies" by reading each statute in the context of other applicable statutes to discern Congress' intention); United States v. Baird, 218 F.3d 221, 227 (3rd Cir. 2000) (finding that any information considered by section 3661 is "subject to the limitations of section 3553(b)").

Congress, in enacting section 3553, encapsulated the essence of contemporary sentencing, setting forth the perimeters in which the Sentencing Commission, in establishing the guidelines, and district courts, in sentencing, may operate. Section 3553(a) provides:

> The court, in determining the particular sentence to be imposed, shall consider –
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment . . . ;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established [by the sentencing guidelines] . . . ;

10

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) . . . ;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records . . . [and] conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Most notably, section 3553(a)(2) identifies four penological goals courts must consider in fashioning a sentence.[6] Any sentence imposed in order to accomplish some other purpose would violate section 3553(a) and would be unlawful. If a court, therefore, takes into account information about a defendant in order to impose a sentence for an illegitimate purpose, then that court has exceeded its sentencing discretion.

Turning to the case at hand, we cannot perceive any legitimate purpose to justify a district court, in fashioning Burgos' sentence within the guideline range, to take into account whether or not she cooperated with the government in the case

---

[6] Obviously, a judge may give one goal more weight than others in a particular case. For example, a judge may consider punishment the primary goal for a defendant convicted of homicide; whereas, specific deterrence may be the goal heavily weighted in fashioning a sentence for a recidivist. For a judge sentencing a defendant convicted of tax evasion, the chief concern may be general deterrence, and, if sentencing a defendant who is a one-time offender, a judge may avoid incarceration and focus on rehabilitative programs. Further, we have explained elsewhere that, "[f]or purposes of determining the need for *incarceration*, Congress specified that only the first three goals, punishment, general deterrence, and specific deterrence, could be considered." See, e.g., United States v. Roman, 989 F.2d 1117, 1122 n.9 (11th Cir. 1993) (Tjoflat, C.J., specially concurring) (emphasis added); see also United States v. Scroggins, 880 F.2d 1204, 1208 (11th Cir. 1989). While Congress prohibited incarcerating an offender for purposes of rehabilitation, see United States v. Dunnigan, 507 U.S. 87, 97, 113 S. Ct. 1111, 1118, 122 L. Ed. 2d 445 (1993), an offender's need for rehabilitation may be considered in prescribing the conditions of probation or supervised release. Scroggins, 880 F.2d at 1208 n.10 (citing 18 U.S.C.A. § 3563(b)).

against her husband. Indeed, neither the district court nor the prosecution has pointed to any such purpose. Punishing Burgos for refusing to inform the government of her husband's unrelated criminal conduct in no way "reflects the seriousness" of her own offense, nor does it "promote respect for the law," or "provide just punishment for the offense" to which she pled guilty. See 18 U.S.C. § 3553(a)(2)(A). Likewise, increasing Burgos' sentence based on her refusal to cooperate does not deter her from any further illegal activity, does not "protect the public from further crimes" she might commit, and does not "provide [her] with needed educational or vocational training, medical care, or other correctional treatment." See 18 U.S.C. § 3553(a)(2)(B)-(D). Penalizing Burgos for refusing to cooperate in the case against her husband simply does not achieve any of the goals set forth in section 3553(a)(2), and, consequently, exceeds the district court's sentencing discretion.

Besides 18 U.S.C.§ 3553(a), there is ample other federal law which circumscribes sentencing judges' discretion. For example, the sentencing guidelines' enabling statutes, 28 U.S.C. §§ 991-998, constrain and limit the discretion of the Sentencing Commission and, necessarily, the discretion of sentencing judges. Congress, in delegating to the Commission the power to establish the guidelines, set out "specific and detailed" instructions, a component

12

the Supreme Court considered constitutionally required. <u>Mistretta v. United States</u>, 488 U.S. 361, 371-79, 109 S. Ct. 647, 654-59, 102 L. Ed. 2d 714 (1989). Congress directed the Commission to establish categories of offenses and categories of defendants. <u>See</u> 28 U.S.C. § 994(c), (d). Nowhere, in the list of factors that Congress directs the Commission to consider in setting up these categories, is there mention of the defendant's cooperation with the government in an unrelated case against another person. <u>See</u> <u>id.</u>[7] In fact, both sections require any consideration of offense or defendant characteristics to bear some "relevance to the nature, extent, place of service, or other incidents (sic) of an appropriate sentence." <u>Id.</u>; <u>see also</u> <u>United States v. Lynch</u>, 934 F.2d 1226, 1236 (11th Cir. 1991) (noting that the Commission allows sentencing courts to make "broad inquiries into *relevant* factors, as defined by the Guidelines, when sentencing a defendant") (emphasis added). We cannot imagine how Burgos' cooperation with the government in the case against her husband could possibly bear on the length of her incarceration. As

---

[7] Section 994(n) does submit that the Commission "shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed . . . to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 28 U.S.C. § 994(n). 18 U.S.C. § 3553(e) likewise reflects Congress' desire for the Commission to allow district courts to impose a lower sentence based on a defendant's "substantial assistance in the in the investigation or prosecution of another person." 18 U.S.C. § 3553(e). Notably, neither of these sections allows a sentence to be *increased* based on a defendant's *failure* to assist. Moreover, we believe these two sections reward assistance of investigations or prosecutions that are in some way related to the offense for which the defendant was charged.

13

the probation officer maintained in the PSI, there is no indication that Burgos'

"criminal conduct in the instant case is related to her husband's pending case."

Therefore, we find that the Commission, in establishing section 1B1.4, did not

intend that such a factor could be taken into account by a sentencing judge in

fashioning a sentence within the guideline range.

Congress further circumscribed sentencing judges' discretion by prohibiting

them from considering certain information that could be relevant to achieving

legitimate penological goals but which, according to Congress, should nevertheless

be ignored. 28 U.S.C.§ 994(d) states, "The Commission shall assure that the

guidelines and policy statements are entirely neutral as to the race, sex, national

origin, creed, and socioeconomic status of offenders."[8] Thus, we have held that it is

---

[8] The sentencing guidelines incorporated this prohibition on considering a defendant's characteristics into §§ 5H1.1-5H1.12. These sections, however, are irrelevant to this case because they apply only to the determination of whether the court may sentence the defendant *outside* the applicable guideline range. The Introductory Commentary to Chapter Five, Part H, states: "The Commission has determined that certain factors are not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range." Id. The Commentary, however, explicitly states that "this does not mean that the Commission views such factors as necessarily inappropriate to the determination of the sentence within the applicable guideline range . . . ." Id.

Moreover, contrary to Burgos' assertion, section 5K1.2 is likewise not applicable here. Section 5K1.2 states that "[a] defendant's refusal to assist authorities in the investigation of other persons may not be considered as an aggravating sentencing factor." U.S.S.G. § 5K1.2. This section, however, appears to apply only to *departures* from the guideline range; that is, the section is irrelevant to the imposition of a sentence within the proper guideline range. We agree with the Seventh Circuit that both the title of Part K of the guidelines, "Departures," as well as the placement of section 5K1.2 with 5K1.1, which authorizes downward departures for assistance rendered, imply that section 5K1.2 applies only to sentence departures. See United States v. Klotz, 943 F.2d 707, 710 (7th Cir. 1991).

improper for a district court to consider such factors as "ownership of a business . . . a home or of a car" as indicators of socioeconomic status.   United States v. Mogel, 956 F.2d 1555, 1564 (11th Cir. 1992).  Such facts are completely "irrelevant for sentencing purposes."  Id.; see also United States v. Hatchett, 923 F.2d 369, 373-74 & n.4 (5th Cir. 1991) (holding that considering the characteristics set forth in section 994(d) is "otherwise prohibited by law" according to section 1B1.4); United States v. Burch, 873 F.2d 765, 769 (5th Cir. 1989) (holding that a "defendant's socio-economic status is never relevant to sentencing" and his education "is relevant only if the defendant misused special training in perpetrating his crime").

Accordingly, we find that district courts' sentencing discretion is not absolute and unlimited under sections 3661 or 1B1.4.  We therefore hold that because the district court took into account Burgos' refusal to cooperate in the case against her husband when sentencing her to the high end of the guideline range, the sentence was unlawful.  We thus REVERSE the sentence and REMAND the case for resentencing.

SO ORDERED.

15