TJOFLAT, Circuit Judge, specially
concurring:
I concur in the court’s judgment, but write separately to emphasize why the Government has not demonstrated that the Booker statutory error in this case is harmless. If we were fully to take into account the extent to which the pre-Booker sentencing model (under which Glover was sentenced) differs from the post-Booker model, we would have to engage in pure *751 guesswork to hold that the Government has shown harmless error in this case. I described these two sentencing models, and the extent to which they differ, in dissenting from this court’s refusal to rehear en banc United States v. Rodriguez. 406 F.3d 1261, 1281 (11th Cir.2005) (Tjoflat, J., dissenting from the denial of rehearing en banc).
Here is what I said:
It is difficult to overstate the extent to which Booker affects the federal sentencing framework.
The starting point under both the old model (pre-Booker) and new model (post-Booker) of federal sentencing is 18 U.S.C. § 3553(a), which states that
[t]he court shall impose a sentence sufficient, but not greater than necessary, ... (A) to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
18 U.S.C. § 3553(a)(2). In other words, the underlying goals of the statute and the Guidelines are “retribution, general deterrence, incapacitation, and rehabilitation.” United States v. Mogel, 956 F.2d 1555, 1558 n. 2 (11th Cir.1992). In selecting an appropriate sentence, the sentencing court must also consider “the nature and circumstances of the offense and the history and characteristics of the defendant”; “the kinds of sentences available”; all relevant guidelines and policy statements issued by the Sentencing Commission; “the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.” ■ 18 U.S.C. § 3553(a)(1), (3)-(7).
Under the old model, the district court was bound to sentence the defendant within the applicable guideline range unless it determined that
an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines ... should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court [could] consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.
18 U.S.C. § 3553(b)(1). Stated differently, the only way the defendant was going to get a downward departure under the old model was by showing that his case was not within the “heartland of typical cases.” Koon v. United States, 518 U.S. 81, 94, 116 S.Ct. 2035, 2044, 135 L.Ed.2d 392 (1996). This was a difficult task. To start with, “the Sentencing Commission has already considered, and the Sentencing Guidelines have already factored in, many if not all circumstances that are arguably relevant to criminal sentencing .... The Guidelines are, as Congress intended them to be, comprehensive .... ” Kate Stith & Jose A. Cabranes, Fear of Judging: Sentencing G'iúdelines in the Federal Courts 102 (1998). Thus, it was quite unlikely that the defendant would be able to identify a circumstance that the Commission had altogether failed to consider. And once the sentencing court determined that the Commission had taken a circumstance into account, the *752 defendant could only argue that the circumstance was present in his case to some atypical degree. This is because the Commission’s substantive judgment as to the significance of the circumstance in a heartland case was unassailable.
The comprehensiveness of the Guidelines and the invulnerability of the policy judgments on which they rest essentially rendered any evidence a defendant might present regarding the need for “adequate deterrence” or the need for “just punishment” irrelevant under the old model. The reason is simply that although reasonable minds may differ as to the level of punishment needed to adequately deter or justly punish a particular offense, once the Commission announced its views on the subject, it was difficult to argue that any particular ease was atypical or outside the heartland with respect to these issues. Rather, a party seeking a departure generally accepted his base offense level as a starting point and then attempted to show that the case was atypical because it was committed in an unusual manner or for some unanticipated and unaccounted-for reason warranted a downward departure.
Because the Guidelines are merely advisory under the new model, the defendant is no longer limited to arguing that his case is somehow atypical. Such arguments, of course, remain viable, but under the new model the defendant can also simply concede that his case is typical and challenge the wisdom of the Commission’s judgment regarding the appropriate punishment in heartland cases. That is, the defendant may simply argue that the applicable guideline sentence is “greater than necessary” to achieve the purposes of the Sentencing Reform Act. 18 U.S.C. § 3553(a). “[T]he Guidelines ... are the product of policy decisions by the Sentencing Commission. ... If those policy decisions are no longer mandatory, the sentencing judge is free to disagree with them.” Booker, 125 S.Ct. at 790 n. 3 (Scalia, J., dissenting).
Subject to review for reasonableness, district judges are now free to apply their “own perceptions of just punishment, deterrence, and protection of the public even when these differ from the perceptions of the Commission members who drew up the Guidelines.” Id. at 790. Although “judges must still consider the sentencing range contained in the Guidelines, ... that range is now nothing more than a suggestion that may or may not be persuasive ... when weighed against the numerous other considerations listed in [§ 3553(a)].” Id. at 787 (Stevens, J., dissenting). Indeed, as one district judge has already observed,
the remedial majority in Booker [] direct[s] courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore. For example, under § 3553(a)(1) a sentencing court must consider the “history and characteristics of the defendant.” But under the guidelines, courts are generally forbidden to consider the defendant’s age, his education and vocational skills, his mental and emotional condition, his physical condition including drug or alcohol dependence, his employment record, his family ties and responsibilities, his so-cio-economic status, his civic and military contributions, and his lack of guidance as a youth. The guidelines’ prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the “history and characteristics” of the defendant.
*753 United States v. Ranum, 353 F.Supp.2d 984, 986 (E.D.Wis.2005) (citations omitted). Thus, mitigating circumstances and substantive policy arguments that were formerly irrelevant in all but the most unusual cases are now potentially relevant in every case.
United States v. Rodriguez, 406 F.3d at 1286-89 (footnotes omitted).
—As I understand the Government’s position, a sentence in the middle of the Guidelines sentence range is presumptively harmless. How the Government can say this — when the district court had absolutely no idea that the model it should have been using rendered the Guidelines advisory and, moreover, gave it, instead of the Sentencing Commission, the ultimate responsibility for assessing the “need” for Glover’s sentences to achieve the sentencing purposes set out in 18 U.S.C. § 3553(a)(2)(A),(B),(C), or (D) — escapes me. Was the district court clairvoyant? Of course not. This is why the court expressed no view as to the need for Glover’s sentences to provide just punishment, or to deter the public from committing the same offenses, or to incapacitate Glover to keep him from committing further criminal acts. What the court would have done had it understood that the Guidelines were merely advisory and that it was “free to disregard them,” as Justice Scalia expressed it, could not be known without putting the court under oath and having it guess at what the sentencing hearing may have looked like had the parties used the post-Booker model. Such speculation would necessarily involve an imagined debate, possibly with or possibly without the introduction of empirical evidence, regarding the wisdom of accepting Sentencing Commission judgment calls made years ago as to the “need” of the sentences in Glover’s case to achieve the objectives set out in § 3553(a)(2).
Where I come down is this. Except in the rarest of cases — say a case in which a statutory mandatory minimum sentence controls or highly influences the court’s decision or the court indicates that it fully understands, pre-Booker, the post-Booker model — we can do nothing but guess whether the Booker statutory error is harmless.