**UNITED STATES of America, Plaintiff,**

v.

**James L. SPINELLE, Defendant.**

**No. 90–CR–80578–01.**

United States District Court, E.D. Michigan, S.D.

Oct. 18, 1993.

Opinion and Order on Reconsideration Oct. 21, 1993.

---

Michael Stern, Asst. U.S. Atty., Detroit, MI, for plaintiff.

James Thomas, Detroit, MI, for defendant.

## OPINION AND ORDER

FEIKENS, District Judge.

This case concerns the authority of a district judge to modify or revoke a statutorily-mandated term of supervised release. I conclude that 18 U.S.C. § 3583(e) authorizes me to terminate a term of supervised release, regardless of whether the original sentence was required by statute or discretionary under the Sentencing Guidelines ("Guidelines"). I also conclude that the petitioner's remarkable efforts at rehabilitation justify this order ending his term of supervised release.

### Background

On July 19, 1990, James L. Spinelle ("Spinelle"), the petitioner, pleaded guilty to participating in a scheme to manufacture marijuana in violation of 21 U.S.C. § 841(b)(1)(C). The Federal Sentencing Guidelines in force at that time dictated that Spinelle be incarcerated for a term of fifty-one to sixty-three months. In addition, subsection 841(b)(1)(C) required that he serve three years of supervised release after his release from prison. At the time of sentencing, I concluded that Spinelle's admirable post-arrest efforts warranted a downward departure from the applicable guidelines range. On April 18, 1991, I sentenced Spinelle to eighteen months in prison followed by three years of supervised release mandated by section 841(b)(1)(C). The government did not appeal Spinelle's eighteen-month sentence.

Spinelle has served the required time in prison and will have finished one year of supervised release on November 18, 1993. He now petitions me for release from serving the remainder of his three-year term of supervised release. The unusual facts of this case have convinced me to grant Spinelle's request. I hereby order him released from his term of supervised release effective November 18, 1993.

Spinelle made the most of his eighteen-month incarceration. He completed much of the requirements necessary to become a Chemical Dependency Therapist during his fourteen-month stay at the Federal Prison Camp in Duluth, Minnesota. The list of his course work is impressive: Drug Education (20 hours), Drug Abuse (40 hours), Stress and Depression (8 hours), Life Planning and Post Release (10 hours), Addictive Personality (10 hours), Psychology and Addictive Behaviors (8 hours), Cocaine Awareness (10 hours), Alcohol Awareness (9 hours), Rational Behavior Training (8 hours), Relapse and Recovery (9 hours), Co-dependency (8 hours), Persuasion and Influence (8 hours), Marriage and the Family (10 hours), The Brain (8 hours), Self Image (8 hours), Weight Loss and Exercise (7 hours), Assertiveness Training (9 hours), Post Release Business Plans (9 hours), The Brain/Mind (15 hours), Decision Making (8 hours), Introduction to Addictive Behavior (11 hours), Relaxation and Meditation (9 hours), and Planning for Success (15 hours).

While at Duluth, Spinelle also wrote a booklet on ways to induce therapeutic dialogue designed for use by substance-abuse therapy groups. In addition, he wrote two chemical dependency lectures, one on the effect that alcohol has on the human body and the other on the concept of addiction as a disease. He also participated in both Narcotics Anonymous and Alcoholics Anonymous. These groups met seven days a week and Spinelle never missed a meeting.

Spinelle's time at Detroit's Project Rehab Half Way House also speaks to his industrious attempts to train himself in his newly-chosen career as a Drug Treatment Therapist. He spent his time at the half-way house working for the Summer Workshop Awareness & Prevention (SWAP) Project, a project which provided group therapy and drug counselling to over 40 "at risk" middle school students from the Southeastern Michigan school districts.

These commendable activities have continued since his release. In September 1992, he was hired by the Community Commission on Drug Abuse to serve as an apprentice Chemical Dependency Therapist/Counselor and Program Development and Evaluation Coor-

dinator. He has authored several state, federal, and foundation grants for the Commission. These efforts have resulted in the Michigan Department of Corrections' funding of a drug-counselling program for probationers. He also has developed and applied for the funding of a therapy program for chemically dependent federal probationers. He hopes to serve as one of the therapists of the substance-abuse program, should it receive funding.

His studies also have continued since his release. He testified in court that since his release he has taken two courses at a local university. In addition, he has met the requirements and presently serves as a Eucharistic Minister for his church in Plymouth. He also recently completed a one-month course to become a prison minister and feels that his role as a prison minister will enable him to assist prisoners with planning for their lives upon release.

His accomplishments have not gone unrecognized. In September 1992, he was awarded a scholarship by the Michigan Department of Public Health to attend an intense five-day workshop by the Grantmanship Center on Program Planning and Proposal Writing. He recently was selected for a scholarship by the Michigan Department of Public Health's Center for Substance Abuse Services to attend the Summer Midwest Therapist Training Institute in Madison, Wisconsin. In addition, he now is licensed by the State of Michigan as a professional counsellor.

The government does not dispute this impressive record. Instead, the government chooses to oppose this motion primarily on jurisdictional grounds, maintaining that I have no authority to relieve Spinelle from his three-year term of supervised release. In particular, the government argues that Spinelle's three-year term of supervised release is mandatory under section 841(b)(1)(C) of the Anti–Drug Abuse Act of 1986 ("ADAA"). Mandatory sentences, it argues, cannot be altered. Alternatively, the government argues that, even if I have the authority to terminate the term of supervised release, I should refuse to do so because Spinelle's attempts at rehabilitation do not warrant termination of his term of supervised release.

This argument is opposed by the great weight of the evidence. Neither of these arguments is persuasive.

1. *The court's authority to terminate a mandatory term of supervised release*

Section 3583 expressly grants courts the power to modify or revoke terms of supervised release after one year of post-release supervision:

(e) Modification of conditions or revocation. The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6)—

(1) terminate a term of supervised release and discharge the person released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the person released and the interest of justice....

18 U.S.C.A. § 3583(e)(1) (1985 & Supp.1993).

Subsection 3583(e) draws no explicit distinction between mandatory and discretionary terms of supervised release. The government nevertheless argues that "the three year term of supervised release that was imposed at the time of sentencing was a mandatory term of sentencing, pursuant to 21 U.S.C. 841(b)(1)(C). As a mandatory term of supervised release, it is not subject to modification by the court." Government's Brief at 2 (Aug. 17, 1993).

The government cites no case law to support its position. The Assistant U.S. Attorney instead explained the government's position during oral argument. He maintained that the word "shall" in subsection 841(b)(1)(C) required me to sentence Spinelle to a three-year term of supervised release. I agree with him. I did that. But that is not the question presented here. The issue before me is whether subsection 3583(e) gives me the power to terminate Spinelle's term of supervision after a mandatory one year of supervised release.

I also found no case law directly addressing this issue. Nevertheless, the authority I

did find tends to indicate that my jurisdiction under subsection 3583(e)(1) does not depend on whether I have discretion to order supervised release in the first place, or whether I sentenced the defendant pursuant to the Sentencing Guidelines or pursuant to some other statutory authority.

There are two different ways of interpreting the government's claim. First, the government alleges that I am without authority to terminate a term of supervised release because subsection 841(b)(1)(C) of Title 21 makes a three-year term of supervised release mandatory and subsection 3583(e) does not apply to mandatory terms of supervised release. My other reading of the government's position is that subsection 3583(e) only permits me to terminate sentences imposed pursuant to the Sentencing Guidelines. My difficulty with both of these interpretations is that they require me to read into the statute a distinction that does not exist. This, I refuse to do.

### a. *Mandatory versus discretionary terms of supervised release*

■ My first interpretation of the government's argument is that section 3583, although making no explicit distinction, nevertheless implicitly distinguishes between discretionary and mandatory terms of supervised release. In essence, the government seems to be arguing that the meaning of the term "supervised release" in section 3583 encompasses discretionary but not mandatory terms of supervised release.

A comparison of subsection 3583(e) with subsection 3583(a) reveals inconsistencies with this interpretation. Subsection 3583(a) states:

(a) In general. The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment, *except that the court shall include as a part of the sentence a requirement that the defendant be placed on a term of supervised release if such term is required by statute.*

18 U.S.C.A. § 3583(a) (1985 & Supp.1993) (emphasis added).

Congress added the underlined portion, above, of subsection 3583(a) in a 1986 amendment. Pre-amendment subsection 3583(a) drew no distinction between discretionary and mandatory terms of supervised release and arguably permitted courts to mete out sentences without including terms of supervised release—even if those terms were mandatory under other specific statutes. The language added in the 1986 amendment reveals that the term "supervised release," without embellishment, covers both discretionary and mandatory terms of supervised release. Any other interpretation would render the underlined language superfluous. When Congress distinguishes between mandatory and discretionary terms of supervised release in section 3583, it does so explicitly. But subsection 3583(e)(1) makes no such explicit distinction. My authority to modify mandatory terms of supervised release should be equivalent to my authority to modify discretionary terms of supervised release.

### b. *Terms of supervisory release ordered pursuant to the Guidelines versus those ordered pursuant to ADAA*

■ My second interpretation of the government's argument is that subsection 3583(e) only permits me to terminate terms of supervised release meted out pursuant to the Sentencing Guidelines. I admit that the legislative history in fact lends some support to the argument that Congress *originally* contemplated that subsection 3583(e) would apply only to sentences imposed under the Guidelines. The Senate Report notes that "Subsection (e) permits the court, *after considering the same factors considered in the original imposition of a term of supervised release,* to terminate a term of supervised release previously ordered at any time after one year of supervised release." S.Rep. No. 225, 98th Cong., 2d Sess., at 124 (1984) (emphasis added), *reprinted in* 1984 U.S.S.C.A.N. 3182, 3307. This "same factors" language arguably indicates that Congress did not contemplate mandatory periods of supervised release when it originally enacted subsection (e).

Although Congress may not originally have contemplated mandatory periods of supervised release, the later amendment to subsection 3583(a) discussed above nevertheless shows that subsection 3583(e) now applies both to terms of supervised release meted out pursuant to the Guidelines as well as to terms imposed pursuant to other statutory authority. I discussed above the distinction that subsection 3583(a) draws between mandatory and discretionary terms. But subsection 3583(a) also makes another relevant distinction; it distinguishes between terms of supervised release imposed pursuant to the Guidelines and those "required by statute." 18 U.S.C.A. § 3583(a). Parroting my analysis above, when Congress wishes to distinguish between guideline-based and statutory terms of supervised release, it does so explicitly. Because subsection 3583(e) makes no such explicit distinction, my authority to terminate terms of supervised release extends to terms of supervised release imposed under statutory as well as guideline authority.

■ Recent cases also support my conclusion that subsection 3583(e)(1) should apply to a term of supervised release mandated pursuant to 21 U.S.C. § 841(b)(1). In *Gozlon–Peretz v. United States*, 498 U.S. 395, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991), the U.S. Supreme Court recognized that the Anti–Drug Abuse Act had adopted the term "supervised release" from the Sentencing Reform Act. As the Court noted, "The reasonable assumption is that when Congress adopted the ADAA and used the term 'supervised release,' it knew of the full definition in the existing Sentencing Reform Act and legislated with reference to it." *Id.* at 408, 111 S.Ct. at 848. Similarly, the "reasonable assumption" here is that Congress knew that districts courts could terminate terms of supervised release under 18 U.S.C. § 3583(e) when it enacted the mandatory term of supervised release in 21 U.S.C. § 841(b)(1)(C). Had Congress wanted to exempt mandatory terms of supervised release from subsection 3583(e), it would have done so explicitly.

At least one court has seized upon this recent Supreme Court language to hold that section 3583 sets out the conditions of supervised release imposed pursuant to section 841(b)(1). In *Rodriguera v. United States*, 954 F.2d 1465 (9th Cir.1992), Rodriguera pleaded guilty to possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The court held that a provision of section 3583 which authorized the revocation or modification of supervisory release terms applied to the supervised release term Rodriguera had received under 21 U.S.C. § 841. As the court remarked:

> Given the anomalous results which would be produced by requiring supervised release terms for these ADAA drug offenses without adopting standards to guide their implementation, it would have been reasonable for Congress to assume that the instructions on revocation of supervised release contained in 18 U.S.C. § 3583(e)(2) would apply to supervised release terms imposed for ADAA offenses.

*Rodriguera*, 954 F.2d at 1469.

I am unconvinced by the government's argument. A plain reading of section 3583(e)(1) gives me the authority to terminate Spinelle's term of supervised release. I therefore must determine whether the facts of Spinelle's case warrant my ending his term of supervision under the specific factors outlined in subsection 3583(e).

### 2. *Spinelle's attempts at rehabilitation warrant a downward departure*

Subsection 3583(e) requires that courts must consider "the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6) before terminating a term of supervised release." That is, subsection 3583(e) requires me to consider many of the same factors as when deciding whether to depart from a guideline sentence in the first place.

■ Judge Breyer of the U.S. Court of Appeals for the First Circuit recently outlined the analysis courts should follow when departing from the penalties set out in the Sentencing Guidelines. *United States v. Rivera*, 994 F.2d 942, 947 (1st Cir.1993). First, *Rivera* notes that the Guidelines draw a distinction between "heartland" cases and unusual cases. The heartland is "a set of typical cases embodying the conduct that

each guideline describes." United States Sentencing Commission, *Guidelines Manual* 5 (Nov.1992). For me to terminate Spinelle's term of supervised release, his situation must qualify as "unusual." *Rivera*, 994 F.2d at 947. To determine whether a case is unusual, the "particular facts, general experience, the Guidelines themselves, related statutes, and the general objectives of sentencing all may be relevant." *Id.*

Determining the boundaries of the "heartland" is less difficult here than usual. Decisions pursuant to subsection 3583(e), unlike the usual sentencing decision, need not consider the facts outlined in subsection 3553(a)(2)(A); that is, the court need not consider "the seriousness of the offense" or the need to promote just punishment or respect for the law. Instead, as the Senate Report noted:

> The sentencing purposes of incapacitation and punishment would not be served by a term of supervised release— ... the primary goal of such a term is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release.

S.Rep. No. 225, 98th Cong., 2d Sess., at 124 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3307.

There is no doubt that the efforts Spinelle has made to rehabilitate himself qualify as "unusual." Spinelle's accomplishments, both while incarcerated and since he left prison, speak for themselves. Perhaps Spinelle's probation officer, Michael P. Burkey, captured the situation best when he noted his intent to request Spinelle's early discharge from supervised release:

> It should be noted that the U.S. Probation Department rarely makes such requests. However, Spinelle is an exception. He is being granted this consideration due to his problem free supervision to date. Spinelle has been tested randomly for illegal drug use since his release date of September 7, 1992. Additionally, it should be noted that Spinelle submitted to random urinalysis while serving the last portion of his custody time at the Monica House Community Treatment Center.... While I cannot forward copies of his urinalysis reports, I can advise you that Spinelle tested *negative* for the use of controlled substances on every occasion. He does not present any supervision problems, does not pose a risk to the community, and appears to [have] made very positive life changes for himself. He completed Substance Abuse courses while incarcerated and has since been employed as a substance abuse grant writer.

Letter from Michael P. Burkey, U.S. Probation Officer, to Bill Hurth, Bureau of Occupational & Professional Reg. (July 8, 1993).

Given this record, I find it difficult to imagine anyone accomplishing more to start his life anew and to retrain himself for a new career.

Of course, not all unusual cases warrant departures from the Guidelines. *Rivera*, 994 F.2d at 947, 949 (noting that unusual cases are only "candidate[s] for departure"). Judge Breyer's opinion in *Rivera* makes clear that the Guidelines contemplate three distinct types of unusual cases: "encouraged departures," "discouraged departures," and "forbidden departures." *Id.* at 948–49. As these terms imply, I am required to treat each of these types of unusual cases differently.

The Guidelines admittedly discourage judges from departing from sentences based on "individual factors" such as those considered here. *Id.* at 948. But I am not being asked in this case to make a sentencing decision; instead, I am being asked to terminate a term of supervised release. The difference is that although the Guidelines discourage departures from sentencing decisions based on these individual factors, they expressly contemplate such departures when considering conditions of supervisory release. Section 5H1.2, for example, notes that although "[e]ducational and vocational skills are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range," they "may be

relevant in determining the conditions of ... supervised release...." U.S.S.G. § 5H1.2. Further, Spinelle's employment record, while not relevant to the ordinary sentencing decision, "may be relevant in determining the conditions of ... supervised release." U.S.S.G. § 5H1.5. The individual factors considered here are not "discouraged" under the Guidelines. Instead, the Senate Report cited above reveals that Spinelle's needs for further "supervision and training programs" are precisely the "kinds" of factors district courts may consider when making departure decisions. *See Rivera*, 994 F.2d at 951 (noting the difference between the "kinds" of factors courts may consider and their "degree.").

Judge Breyer's opinion in *Rivera* makes clear that appellate courts have plenary authority to decide whether a particular *kind* of factor permits departure. *Rivera*, 994 F.2d at 951. Whether the "degree" of "unusualness" warrants a departure is best determined by the district court. *Id.* at 952. I cannot think of a more "unusual" set of facts than those presented in this case. Impressed by Spinelle's efforts, I hereby order him released from supervised release effective November 18, 1993.

## OPINION AND ORDER ON RECONSIDERATION

On August 2, 1993, I ordered the immediate termination of defendant James L. Spinelle's term of supervised release. The government filed objections to that Order, persuasively arguing that Spinelle must serve a full year of supervised release before the remainder of his term could be terminated. Government's Brief at 2 (Aug. 17, 1993). Further, the government argued that Federal Rule of Criminal Procedure 32.1(b) gives it a right to be heard on this issue. *Id.* at 3.

I agreed with this analysis. A hearing was scheduled and arguments were heard on October 12, 1993. I issued an Opinion and Order on October 18, 1993, ordering Spinelle released from supervised release effective November 18, 1993.

The government filed a "Supplemental Brief in Support of its Motion for Reconsideration" on October 19, 1993. I treat this brief as a motion to reconsider my October 18, 1993 Opinion and Order. After careful consideration, I am unpersuaded by the government's arguments.

For the foregoing reasons, IT IS ORDERED that the government's motion for reconsideration be, and it is hereby, DENIED.

Dated: October 21, 1993.