**UNITED STATES of America,**

v.

**Dave E. SCHEINER.**

**Cr. A. No. 94–287–1.**

United States District Court, E.D. Pennsylvania.

Jan. 15, 1995.

Donald J. Goldberg, Ballard, Spahr, Andrews and Ingersoll and Theodore Simon, Philadelphia, PA, for defendants.

Lee Dobkin, U.S. Attorney's Office, Philadelphia, PA, for the U.S.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Defendant David Scheiner, a licensed podiatrist, was sentenced to fifteen months imprisonment, a $25,000 fine, and payment of $37,000 in restitution for his participation in a conspiracy to defraud various insurance companies by submitting false and fraudulent claims for medical services he purportedly rendered. The sentence was imposed by the Court after the defendant had pleaded guilty to three counts of mail fraud pursuant to a plea agreement he entered into with the Government. At sentencing, the defendant moved for a downward departure from the determined Guidelines range of 15 to 21 months based on his civic, charitable, and public service activities. *See* U.S. Sentencing Comm'n, *Guidelines Manual* § 5H1.11, § 5K2.0 (Nov. 1994) [hereinafter U.S.S.G.]. Following a lengthy hearing during which the defendant presented testimony from twenty-three individuals avowing to the defendant's community involvement, and after a consideration of the presentence investigation report, various letters submitted on behalf of the defendant, and counsel's written submission and oral argument, the motion was denied by the Court. (Tr. of 11/2/94, at 58–63.)

After sentence was imposed and judgment was entered, the defendant did not file a notice of appeal within the ten-day period provided by the Federal Rules of Appellate Procedure. Nor was the defendant advised by the Court after the sentencing of his right to do so. The defendant, however, had been advised of his right to appeal his sentence at the time the Court accepted his guilty plea. Having obtained new counsel, the defendant now argues that it was error for the Court not to advise him after his sentencing of his right to appeal his sentence and, therefore, he should be resentenced. At this proposed resentencing, the defendant wishes to reargue that he is entitled to a downward departure based upon extraordinary civic and charitable contributions, and in addition, the defendant wishes to proffer the previously unasserted grounds for a downward departure of extraordinary family ties and responsibilities, personal circumstances, and that a downward departure is warranted based on the combination of all the aforementioned factors. The Government opposes this request.

■ In the alternative, the defendant seeks an enlargement of time to appeal his sentence, asserting that his failure to appeal his sentence in a timely fashion was based on excusable neglect. The defendant points to a medically-confirmed post-sentencing depression that allegedly compromised his ability to understand his right to appeal his sentence and to the Court's failure to advise him of his right to appeal after sentencing as justifications for his requested extension.[1] The Government does not oppose this request.

Finally, the defendant requests that, pending resentencing or appeal, he be permitted to remain free on bail. The defendant contends that the Court's denial of the request for a downward departure based upon extraordinary civic and charitable activities raises substantial questions of law because the Court committed error when determining

---

1. Since any extension the defendant receives would be limited to an additional thirty days, Fed.R.App.P. 4(b), as a precautionary measure the defendant filed a notice of appeal within forty days of the Court's entered judgment. The defendant's notice and the fact that more than forty days have passed since the entry of judgment do not divest the Court of jurisdiction to rule on these motions, however. *United States v. Vastola*, 899 F.2d 211, 219–22 (3d Cir.), *vacated on other grounds*, 497 U.S. 1001, 110 S.Ct. 3233, 111 L.Ed.2d 744 (1990); *see also United States v. Wrice*, 954 F.2d 406, 408–10 (6th Cir.) (affirming district court's grant nunc pro tunc of defendant's motion for extension of time to file an appeal where the defendant filed his notice of appeal thirty-nine days after entry of judgment but filed his motion for extension more than six months later), *cert. denied*, — U.S. —, 112 S.Ct. 2286, 119 L.Ed.2d 211 (1992).

whether the defendant's activities were extraordinary and also impermissibly took into consideration the effect the proposed departure would have on the penological objectives that a sentence provide just punishment and afford adequate deterrence. 18 U.S.C.A. § 3553(a)(2) (West 1985 & Supp.1993). The Government opposes any grant of bail to the defendant.

The following questions raised by the defendant's motions are consequently now before the Court:

1. Whether it was error for the Court to fail to advise the defendant after sentencing of his right to appeal his sentence and, if so, whether the defendant is entitled to be resentenced;

2. Whether the defendant's failure to file a notice of appeal within ten days from sentencing was caused by excusable neglect entitling the defendant to an extension of time for filing an appeal;

3. Whether the Court's consideration of just punishment and deterrence in determining whether the defendant's civic and charitable activities were extraordinary was legally incorrect; and

4. Whether the Court impermissibly took into account notions of just punishment and deterrence in deciding not to depart on the grounds of extraordinary civic and charitable contributions.

The Court finds that:

1. The Court's failure to advise the defendant after sentencing of his right to appeal his sentence was technical and did not result in prejudice to the defendant, thus not requiring that the defendant be resentenced;

2. The defendant's failure to file a notice of appeal within ten days of his sentencing was the result of excusable neglect due to both the Court's failure to advise the defendant after sentencing of his right to appeal his sentence and the defendant's post-sentencing depressive state of mind, thus entitling the defendant to an extension of time for filing an appeal of his sentence;

3. The Court's reference to the concepts of just punishment and deterrence in determining that the defendant's civic and charita-ble activities were not extraordinary was not prohibited; and

4. In deciding not to depart from the Guidelines, the Court was similarly permitted to take into account the penological objectives that a sentence provide just punishment and afford adequate deterrence.

Based on the above conclusions, the Court will grant the defendant an extension of time to file an appeal because of excusable neglect but deny the defendant's request for a stay of surrender and bail pending appeal on the grounds that the appeal does not raise substantial questions of law.

## I. DEFENDANT'S REQUEST FOR RESENTENCING

■ Federal Rule of Criminal Procedure 32(a)(2) provides:

After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of the defendant's right to appeal, including any right to appeal the sentence, and of the right of a person who is unable to pay the cost of an appeal for leave to file in forma pauperis. There shall be no duty on the court to advise the defendant of any right of appeal after sentence is imposed following a plea of guilty or nolo contendere, except that the court shall advise the defendant of any right to appeal the sentence.

Fed.R.Crim.P. 32(a)(2).

■ Since the defendant entered into a plea agreement and pleaded guilty to his crimes, "[a]fter imposing sentence ... the [Court] should have advised [the] defendant of his right to appeal [his sentence] under Rule 32(a)(2)." *United States v. Caswell,* 36 F.3d 29, 30 (7th Cir.1994). Ordinarily, a violation of Rule 32(a)(2) requires resentencing of the defendant. *United States v. Drummond,* 903 F.2d 1171, 1172 n. 2 (8th Cir.1990) ("The procedure for reinstating the right to appeal is to vacate the sentence and remand to the trial court for resentencing."), *cert. denied,* 498 U.S. 1049, 111 S.Ct. 759, 112 L.Ed.2d 779 (1991). However, "mere technical noncompliance with the provisions of Rule 32(a)(2) [does] not require a resentencing

absent a clear showing of prejudice." *Hoskins v. United States*, 462 F.2d 271, 274 (3d Cir.1972). No prejudice will be deemed to have occurred, and hence no new sentencing is necessitated, "[w]here notice of the appeal rights is placed on the record in a formal judicial proceeding prior to sentencing and the interval between that proceeding and the sentencing is of a brief enough duration to ensure beyond a reasonable doubt that the notification will be fresh in the mind of the defendant at the time of sentencing." *Id.*

Though the defendant was not advised of his right to appeal his sentence after his *sentencing*, he was in fact advised of his right to appeal his sentence approximately two months before his sentencing at his change of plea hearing. Indeed, at the hearing, the following exchange took place:

> THE COURT: Do you understand that by pleading guilty you are giving up the right to appeal from any conviction after trial, and that the only appeal from a guilty plea would be if I impose an illegal sentence or if there are any errors in this proceeding?
>
> THE DEFENDANT: Yes.

(Tr. of 8/10/94, at 11.)

In *United States v. Garcia–Flores*, 906 F.2d 147 (5th Cir.1990), the court found that a similar advise to the defendant of the right to appeal his sentence provided to the defendant not after sentencing but *at the time of rearraignment* satisfied the requirement of Rule 32(a)(2).[2] The court rejected the defendant's claim that the admonition given to him two months before his sentencing was deficient as a notice of his appellate rights and concluded that, because the defendant acknowledged that he understood his right to appeal his sentence, the error the district court committed in not making the defendant aware of his right to appeal his sentence after sentencing was harmless.

**2.** Specifically, the following exchange between the defendant and the sentencing court was deemed to be sufficient under the Rule:

> THE COURT: A sentence imposed pursuant to the sentencing guidelines may be subject to appellate review. That means that if I sentence you and I don't follow the guidelines, and I give you less sentence that the Government consents—or the guidelines require, the Government may appeal that. And if I give

There is a second independent reason warranting against a resentencing of the defendant. As mentioned above, the Court is extending the time to appeal based on a finding of excusable neglect. This extension renders the defendant's notice of appeal timely under the appellate rules, thus dispelling any prejudice to the defendant that may have resulted from not being advised after sentencing of the right to file an appeal. In *United States v. Caswell*, 36 F.3d 29 (7th Cir.1994), similar circumstances arose when a defendant who had entered a guilty plea, as here, was not informed after sentencing that he had a right to appeal his sentence. The Seventh Circuit found that, because the sentencing court had extended the time to file an appeal and the defendant was in fact heard on appeal, the violation was technical and did not deny the defendant his rights.

█ In light of both *Garcia–Flores* and *Caswell*, the Court cannot conclude that its omission after sentencing truly effected any prejudice. Any nonconformity with Rule 32(a)(2) after the defendant was sentenced was of negligible moment given the warning he was previously afforded as well as the opportunity the defendant will have to appeal his sentence. Rule 32(a)(2) is meant to safeguard a defendant's right to appeal. It is not a wayward vehicle for extracting a legal windfall in the form of a resentencing which would permit the defendant, now armed with new counsel, to raise heretofore unadvanced grounds for a reduction in his sentence. Where a technical noncompliance may be remedied to preserve this right, or where in fact a defendant has been alerted to his right via a meaningful exchange with a sentencing court as envisioned by the court in *Hoskins*, the Rule cannot render forth as its fruitage a de novo resentencing.[3] The defendant's motion for a resentencing is therefore denied.

> you more than the sentencing guidelines require, you have the right to appeal. Do you understand?
>
> GARCIA–FLORES: Yes, I do.
>
> *Garcia–Flores*, 906 F.2d at 148.

**3.** The defendant's reliance upon *Farries v. United States*, 439 F.2d 781 (3d Cir.1971), for the proposition that he is entitled to a resentencing in this matter is misplaced. Though the decision vacat-

## II. DEFENDANT'S REQUEST FOR AN EXTENSION OF TIME TO FILE AN APPEAL

■ The defendant also requests that the Court grant him an extension of time to file an appeal based on excusable neglect under Federal Rule of Appellate Procedure 4(b). That Rule, in relevant part, provides:

> In a criminal case, a defendant shall file the notice of appeal in the district court within 10 days after the entry either of the judgment or order appealed from, or of a notice of appeal by the Government.
>
> . . . .
>
> Upon a showing of excusable neglect, the district court may—before or after the time has expired, with or without motion and notice—extend the time for filing a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision.

Fed.R.App.P. 4(b).

The term "excusable neglect" has been explained as being guided by concerns of fairness. *United States v. Ford*, 627 F.2d 807, 811 (7th Cir.), *cert. denied*, 449 U.S. 923, 101 S.Ct. 324, 66 L.Ed.2d 151 (1980); *United States v. Hoye*, 548 F.2d 1271, 1273 (6th Cir.1977). In *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. Partnership*, — U.S. —, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the Supreme Court noted:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking into account of all relevant circumstances surrounding the party's omissions. These include ... the danger of prejudice to the [movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* — U.S. at —, 113 S.Ct. at 1498 (footnote omitted). The Court also resolved that by using the term "excusable neglect," "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* — U.S. at —, 113 S.Ct. at 1495. Though the ruling in *Pioneer* was made within the context of a Bankruptcy Rule, the Supreme Court's explication of the term has been found to be equally applicable to Appellate Rule 4(b). *United States v. Hooper*, 9 F.3d 257, 259 (2d Cir.1993).

The defendant's claim is that the Court's failure to advise him of his rights to appeal his sentence after sentencing coupled with post-sentencing depression that "adversely influenced [his] mental condition ... and prevented him from making any rational decision about pursuing an appeal" warrant an extension of time to file an appeal based on excusable neglect. (Def.Mot. for Resentencing, at 10.) The Government has stated that it does not oppose this request. The Court agrees that there is indeed a sufficient basis for a finding that the defendant's late filing of a notice of appeal was caused by excusable neglect. Consequently, the defendant's unopposed motion for an extension of time will be granted.

## III. STAY OF SURRENDER AND BAIL PENDING APPEAL

■ Having concluded that the defendant may appeal his sentence, the Court

---

ed Farries's sentence and granted him a new sentencing based on the district court's failure to advise him of his appeal rights, the case does not mandate the same in this matter. Since *Farries* was decided before the Third Circuit's decision in *Hoskins*, *Farries* did not consider whether the sentencing court's error was indeed harmless or technical. Thus, to the extent that *Farries* did not make such a determination, it does not reflect the status of this circuit's law. *See United States v. Franchi*, 786 F.Supp. 520, 522 (W.D.Pa. 1991) (citing *Hoskins* as the standard to be applied where a court fails to advise a defendant of his appellate rights).

It should be noted, however, that *Hoskins* was decided before 1987, the year when Rule 32(a)2 was amended to require a sentencing court to inform a defendant who pleaded guilty of his right to appeal his sentence. The distinction is truly one without a difference, as an analysis of the consequences of a court's failure to advise a defendant of his right to file a notice of appeal is the same irrespective of whether the defendant pleads guilty or is found guilty at trial. *Garcia–Flores*, 906 F.2d at 148 n. 1.

must consider whether the defendant may be released on bail pending such an appeal. This determination is directed by the decision in *United States v. Miller*, 753 F.2d 19 (3d Cir.1985). In *Miller*, the court interpreted the language of 18 U.S.C. § 3143(b), the statutory authority for permitting an appealing defendant to be released on bail.[4] The court stated that in order to find a defendant to be eligible for bail a district court

> must determine that the question raised on appeal is a "substantial" one, i.e. it must find that the significant question at issue is one which is either novel, which has not been decided by controlling precedent, or is fairly doubtful.... After the court finds that the question on appeal meets the new "substantial" test, it must determine whether that issue is sufficiently important to the merits that a contrary appellate ruling is likely to require reversal or a new trial.

*Miller*, 753 F.2d at 23. The *Miller* analysis was subsequently refined to make it clear that an issue does not become substantial simply because there exists no controlling precedent. *United States v. Smith*, 793 F.2d 85, 88–90 (3d Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 832. In addition, a defendant seeking bail must be able to show that there is more than a minimal possibility that the appellate court will rule in the defendant's favor on the presented question.[5] *Id.* at 89–90.

▮ The defendant has identified two legal issues for appeal. One, whether the court was permitted to consider notions of just punishment and deterrence in determining whether the defendant's civic, charitable, and public activities were extraordinary; and two, whether it was similarly permissible for the court to have considered the effect of the proposed departure on the penological goals that a sentence provide, *inter alia*, for just punishment and deterrence.[6]

### A. Extraordinary Civic and Charitable Activities

▮ A defendant's prior good works, including his civic, charitable and public service

---

**4.** Section 3143(b) requires that an appealing defendant be denied bail unless a court finds:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released ...; and
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
> > (i) reversal,
> > (ii) an order for a new trial,
> > (iii) a sentence that does not include a term of imprisonment, or
> > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C.A. § 3143(b) (West Supp.1993).

**5.** The defendant also implores this Court to grant bail pending appeal even though the issues may not be substantial, given his community ties, family responsibilities, and the relatively short length of his sentence. In support of this argument, the defendant relies on a case from the district of Maryland where the court determined that even though the defendant did not present substantial questions on appeal, the defendant had presented sufficient "extenuating circumstances," to allow him to be released on bail pending his appeal. *United States v. McManus*, 651 F.Supp. 382 (D.Md.), *aff'd on other grounds*, 826 F.2d 1061 (4th Cir.1987), *cert. denied*, 484

U.S. 1046, 108 S.Ct. 784, 98 L.Ed.2d 870 (1988). The decision to afford bail to the defendant in *McManus* was not restrained, however, by any Fourth Circuit interpretation of § 3143(b). The Court is thus unwilling to fashion its own standard for determining whether bail is warranted which flies in the face of the clear language of both § 3143(b) and *Miller*.

**6.** The defendant also raises a less substantial third issue attacking the Guidelines themselves that the Court dismisses as being without merit. In this argument, the defendant claims that the Court should have looked *first* to the statutory objectives of § 3553(a) before applying the Guidelines, and in the event the Court determined that the Guidelines range applicable in this case to this defendant did not reflect those statutory factors, § 3553(a) would have required the Court to ignore the Guidelines when imposing sentence and to fashion its own just sentence. Besides the significant fact that the defendant has offered no articulable reason why the Guidelines as applied in his case would infringe upon the factors in § 3553(a), the argument overlooks the fact that "courts have held in effect that a refusal to depart [as done by the Court here] can never result in a sentence inconsistent with § 3553(a)." *United States v. Kikumura*, 918 F.2d 1084, 1111 (3d Cir.1990). Thus, the defendant's attack on the Guidelines claiming that he was not subject to a sentence that incorporated the § 3553(a) factors is unavailing and not substantial on appeal.

activities "are not ordinarily relevant when considering whether a sentence should be outside the guideline range." U.S.S.G. § 5H1.11. However, "when a 'not ordinary relevant' factor can be characterized as 'extraordinary,' a district court has the power to depart from the guidelines." *United States v. Monaco*, 23 F.3d 793, 801 (3d Cir.1994). An "extraordinary" circumstance "is not something that is likely to occur frequently, and when it does, the interests of justice weigh more heavily [in favor of a departure] than they do in favor of rigidly enforcing the guidelines without regard for legitimate penological bases of sentencing." *Id.* (citing Edward R. Becker, *Flexibility and Discretion Available to the Sentencing Judge Under the Guideline Regime*, Federal Probation, Dec. 1991 at 10, 13); *see also* U.S.S.G. § 5K2.0 commentary (stating that cases where departures on the basis of extraordinary circumstances are warranted will be "extremely rare"). When seeking a departure based on extraordinary circumstances, the burden of production and persuasion as to whether the activities are indeed exceptional rest with the defendant at all times. *United States v. Higgins*, 967 F.2d 841, 846 n. 2 (3d Cir.1992).

■ In this case, the defendant presented extensive testimony from various witnesses about his good works among the young and poor in the North Philadelphia area, with some witnesses claiming his involvement reached as far back as the 1970s. Also offered were a number of letters from the defendant's acquaintances regarding his community activities. The defendant was said to have financially sponsored several basketball teams and at least one league, to have been active on several community boards, to have worked in a podiatry clinic where free services were provided to the poor, and generally to have served as a source of support and inspiration to many. The defendant was additionally described as having not only made financial contributions but to have "given of himself" to those in the community.[7]

After hearing all the evidence, the Court measured the effect of any ruling on the young, poor, and minority individuals the defendant claimed to have helped and for whom the defendant, a non-minority, allegedly served as a role model. In so doing, the Court took into account the view that an overly lenient sentence may be seen by those very individuals in the community the defendant sought to help as an indication that the law distinguishes between defendants of different racial and socioeconomic background.[8] The Court also weighed the defendant's medical training, the effect that a departure would have on others in the medical community, the absence of mitigating financial circumstances, the four year duration of the criminal conspiracy, and the fact that the defendant's conduct had not ceased until detection had become inevitable. (Tr. of 11/2/94, at 60–62.) "All in all," (*id.* at 62), the Court found the defendant's good works to have been "considerable," (*id.* at 60), "commendable," (*id.* at 63), but not "exceptional, extraordinary or unusual," (*id.* at 62).

The defendant argues that the Court's approach to its determination of whether his activities were extraordinary was manifest error. In essence, he claims that the Court impermissibly evaluated factors other than

---

7. Some evidence on the record suggests that the defendant received, at least indirectly, some financial benefit from his good work. For example, it was not disputed that in providing medical services to patients who were otherwise financially unable to pay for their services, the defendant submitted Medicare, Medicaid and, when available, private insurance claims for reimbursement. (Tr. of 11/2/94, at 39 (testimony of Dr. Robert Wentworth).) The defendant was also affiliated with St. Joseph's Hospital and Kennedy Memorial Hospital, two hospitals which service the North Philadelphia area. At the very minimum, therefore, goodwill accrued to the defendant from his community activities.

8. Specifically, the Court stated:

[N]o matter who you are, the color of your skin, the amount of money in your wallet, the types of people that you know, whether they are influential or not, should not make a difference ultimately in the sentencing. And the message that would go out from this Court, should there be a downward departure for the mitigating factors which have been identified here, would be the wrong message. That different defendants are treated differently depending upon their social, economic status or their ethnic or racial persuasion.
(Tr. of 11/2/94, at 62.)

the scope, quantity, and length of the defendant's charitable and civic contributions when deciding that his contributions were not exceptional. In particular, the defendant claims, the Court's heavy reliance on the concepts of deterrence and just punishment contravene the Guidelines themselves.

The Court disagrees that narrowing its looking glass to the defendant's "good conduct," to the exclusion of all other factors, is the correct approach. To the contrary, sentencing courts have great discretion when deciding whether a factor that may warrant departure is present to an extraordinary degree. Indeed, Justice Breyer, one of the original drafters of the Guidelines, articulated while sitting as chief judge of the First Circuit that in determining whether a factor "not ordinarily relevant" is present to an extraordinary degree, the "particular facts, general experience, the Guidelines themselves, related statutes, and the general objectives of sentencing all may be relevant." *United States v. Rivera,* 994 F.2d 942, 947 (1st Cir.1993); *see also United States v. Spinelle,* 835 F.Supp. 987, 993 (E.D.Mich.1993), *aff'd,* 41 F.3d 1056 (6th Cir.1994). As firsthand witnesses to a defendant's claims and evidence, district courts wield a comparative advantage over appellate courts in deciding whether a defendant has demonstrated truly extraordinary circumstances. Oftentimes, the crucial tenor of a sentencing hearing may be unable to be recreated via a cold record. By necessity, therefore, "the law provides a district court a degree of 'leeway' in making [these] 'kind of degree' judgments." *United States v. Doe,* 18 F.3d 41, 43 (1st Cir.1994) (quoting *Rivera* ). The defendant's position undermines the substantial discretion afforded to sentencing courts to inform their decisions as completely as possible. Against the discretionary backdrop afforded courts, therefore, the defendant's position is plainly insufficient.

Other courts have looked beyond factors other than the very activities engaged in by the defendant to inform their decision as to whether the defendant's civic and charitable contributions were indeed extraordinary. In *United States v. Haversat,* 22 F.3d 790, 796 (8th Cir.1994), the Eighth Circuit found insufficient evidence to support a finding that the defendant's community contributions viewed in context were extraordinary. In thus affirming the district court's decision to deny a departure, the court noted that white collar criminals "enjoy sufficient income and community status so that they have the opportunities to engage in charitable and benevolent activities." *Id.* at 796. Similarly, the Sixth Circuit, when presented with a situation where a defendant sought a downward departure for civic activities placed the activities in context and found it to be not extraordinary but "[r]ather, ... *usual* and *ordinary,* in the prosecution of similar white-collar crimes involving high ranking corporate executives ... to find that a defendant was involved as a leader in community charities, civic organizations, and church efforts." *United States v. Kohlbach,* 38 F.3d 832, 838 (6th Cir.1994).

With the defendant's argument having been clearly rejected by the approaches taken in the Sixth and Eighth Circuits and with the defendant offering no support for his position, the Court concludes that the argument lacks sufficient merit to render it a substantial question on appeal. Rather than being constrained to look exclusively to the defendant's civic and charitable activities in the abstract and decide whether those activities are present only in some sort of absolute sense, a sentencing court is called upon to exercise wide discretion under the circumstances of the case when deciding whether those activities are indeed extraordinary.

### B. *Factors in Decision Not to Depart*

■ The second issue to be raised on appeal by the defendant is whether a sentencing court can consider the statutory factors outlined in 18 U.S.C. § 3553(a)(2) when declining to depart downward for a specific offender-related characteristic as authorized by § 5K2.0 of the Guidelines. Under § 3553(a)(2), Congress has declared that in determining the particular sentence to be imposed, a court shall consider

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C.A. § 3553(a)(2) (West 1985 & Supp. 1993). At the defendant's sentencing, the Court weighed in the first two of these factors, i.e., just punishment and the adequacy of deterrence, when considering whether to depart from the Guidelines range. The Court recognized at sentencing that it had the power to depart, *see United States v. Headley,* 923 F.2d 1079, 1082–83 (3d Cir. 1991); (Tr. of 11/2/94, at 49–50), but decided not to do so upon a finding that the circumstances were not extraordinary.[9]

The defendant claims that the Court impermissibly considered these factors in its resolution of the defendant's motion because a court's decision to depart cannot be based on aggravating or mitigating factors which have been adequately considered by the Guidelines themselves. For this proposition the defendant alludes to statutory language stating that a court may depart only where it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."[10] 18 U.S.C.A. § 3553(b) (West Supp.1993). As support for the argument that the factors set forth by § 3553(a)(2) have already been incorporated into the Guidelines, the defendant refers to the introduction to the Guidelines manual, which states:

The Sentencing Reform Act of 1984 … provides for the development of guidelines that will further the basic purposes of criminal punishment: *deterrence,* incapacitation, *just punishment,* and rehabilitation.

U.S.S.G. ch. 1, pt. A, at 1 (Introduction) (emphasis added). Thus, the defendant claims, because the Court considered deterrence and just punishment in its decision *not* to depart, he was subjected to an illegal sentence.

▮▮▮▮▮ Appellate courts ordinarily do not have jurisdiction to hear arguments concerning a district court's refusal to depart downward from the Guidelines unless the district court erroneously concluded that it did not have the power to depart. *United States v. Denardi,* 892 F.2d 269, 271–72 (3d Cir.1989); *see also United States v. Mummert,* 34 F.3d 201, 205–06 (3d Cir.1994). An issue may also be entertained on appeal, however, if the appealing party contends that the sentencing court's discretionary decision not to depart arose out of an illegal application of the Guidelines. 18 U.S.C.A. § 3742(a)(2) (West Supp.1993). Thus, in *United States v. Perakis,* 937 F.2d 110 (3d Cir.1991), where the sentencing court lawfully applied the Guidelines and used its discretion in refusing to grant the defendant's request for home confinement instead of incarceration, the request was dismissed for lack of appellate jurisdiction. *Id.* at 111–12. Here, the defendant founds his argument upon the belief that the court's refusal to depart from the Guidelines incarceration range so that he could have been sentenced

---

**9.** The following represented the substance of the Court's decision to deny the motion:

[A]ll in all, I am not persuaded that this is exceptional, extraordinary or unusual. Even if we were to compare this case to [*United States v. Welshans,* Cr. No. L–93–0359 (D.Md. Feb. 22, 1994)] the case that [the defendant] brought to my attention, the amount of the contributions are not exceptionally greater than in that case. I recognize that there may be in this case some lives that might have been affected by the defendant's willingness to be a participant in the community…. But as a matter of just punishment, it would not be fair to depart in this case.

As a matter of deterrents [sic], it would not serve public policy to depart in this case. Both in terms of the audience which is going to receive this message in North Philadelphia,

and secondly, the medical audience, which is another audience we have to address. If you get caught and if you cheat the insurance companies in the process of delivering medical services, you're going to do time. And that's a message that goes out from here today…. The motion for a downward departure is denied.

(Tr. of 11/2/94, at 62–63.) Though the defendant was not granted a departure from the Guidelines range based on his civic and charitable activities, the Court nevertheless informed its judgment with the defendant's contributions as to the appropriate sentence within the Guidelines range itself. As a result, the Court sentenced the defendant to the minimum period of imprisonment within the applicable range.

**10.** This language is repeated in § 5K2.0 of the Guidelines.

to home confinement instead of the fifteen months imprisonment he received constituted legal error in applying the Guidelines.

The Court disagrees with the defendant's position. Even accepting the defendant's contention that notions of just punishment and the adequacy of deterrence were already factored into the Sentencing Commission's calculus in determining the appropriate Guidelines range, it does not follow that § 3553(b) prohibits considerations of just punishment and deterrence from informing the Court's decision not to depart. While it is true that § 3553(b) forbids a sentencing court from basing its decision *to depart* on a circumstance adequately taken into account by the Sentencing Commission in formulating the Guidelines, it is not equally true that § 3553(b) bars the sentencing court from informing its judgment *not* to depart on factors, i.e., just punishment and adequate deterrence, which may already have been considered by the Sentencing Commission. This is the inescapable meaning of both § 3553(b) and of § 5K2.0 of the Guidelines, the plain language of which only address the Court's power to depart.

Even assuming the language of § 3553(b) and § 5K2.0 encompasses refusals to depart, it still does not follow that considerations of just punishment and deterrence cannot be considered as grounds for a court's denial of a motion to depart. This was the counsel provided by the Eleventh Circuit in *United States v. Mogel*, 956 F.2d 1555 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992). *Mogel* involved a decision by the district court to depart downward on the basis of offender-related characteristics. *See* 28 U.S.C.A. § 994(d)(1)–(11) (West 1993) (listing characteristics to be taken into account by the Sentencing Commission in promulgating the Guidelines); U.S.S.G. §§ 5H1.1–12 (listing characteristics under the Guidelines). The court of appeals reversed, finding that the stated grounds for departure were not warranted. In so doing, the Eleventh Circuit noted that the district court had departed "without taking into account the relevant penological goals underlying the Sentencing Guidelines." *Mogel*, 956 F.2d at 1558. The appellate court listed as

those penological goals the concepts of retribution, general deterrence, incapacitation and rehabilitation. *Id.* at 1558 n. 2; *see also United States v. Kikumura*, 918 F.2d 1084, 1111 (3d Cir.1990) (stating that a sentence should be "minimally sufficient to satisfy concerns of retribution, general deterrence, specific deterrence, and rehabilitation—the four major theories that undergird criminal law"). All told, the *Mogel* court resolved that, "assuming that the offender-related characteristics present in a given case meet the statutory standard under section 3553(b) [i.e., a departure is authorized], a judge therefore may depart ... on the basis of offender-related characteristics *only if considerations of general deterrence or retribution counsel such a departure.*" *Mogel*, 956 F.2d at 1563 (emphasis added). In other words, the court advised district courts that where a departure is permissible due to a defendant's extraordinary circumstances, the departure nevertheless "must be firmly grounded in one or more of the relevant penological goals underlying the Guidelines." *Id.; see also United States v. McHan*, 920 F.2d 244, 248 (4th Cir.1990) (considering the effect of granting a downward departure for civic and charitable contributions for an offender who may have derived the income used for the charitable contributions from drugs on the public's respect for the law).

Consequently, like his first argument claiming that a sentencing court cannot consider notions of just punishment and deterrence when deciding whether a defendant's civic and charitable contributions are extraordinary, no reason exists to afford the defendant bail pending an appellate determination on this question. The issues forwarded by the defendant thus being incapable of posing a substantial question on appeal, the motion for bail pending appeal is denied.

## IV. CONCLUSION

In view of the foregoing, the defendant has evidenced only sufficient reason to grant him an extension of time to file an appeal in this matter. The Court's failure to make the defendant aware of his rights to appeal his sentence after his sentencing do not warrant a resentencing since no prejudice has result-

ed from the omission. Furthermore, pending his already noticed appeal, the defendant is not entitled to remain free on bail. The issues he has presented, whether a sentencing court can take into account considerations of just punishment and deterrence when deciding whether a defendant's civic and charitable activities are extraordinary and whether the same considerations can be taken into account when a sentencing court decides not to depart based on extraordinary civic and charitable activities, do not pose substantial questions of law for appeal.

An order will be entered accordingly.

### ORDER

**AND NOW,** this 15th day of January, 1995, upon consideration of Defendant Dave Scheiner's Motion for Resentencing and/or Post Sentencing Notice of Appellate Rights and/or Enlargement of Time in Which to File Notice of Appeal and/or Evidentiary Hearing and Appropriate Relief (Doc. No. 74), defendant's Motion to Stay Self–Surrender Pending Resentencing and/or Appeal (Doc. No. 77), the supplemental memoranda in support thereof, the Government's consolidated response thereto, and the letters submitted by the parties, **IT IS ORDERED** that:

1. The defendant's motion for resentencing is **DENIED.**

2. The defendant's motion for an enlargement of time to file an appeal is **GRANTED.**

3. The defendant's motion to stay surrender pending appeal is **DENIED.**

4. The defendant shall self-surrender on January 30, 1995 at 2 p.m. at the institution designated by the Bureau of Prisons.

**AND IT IS SO ORDERED.**